Perkins, Adm'r, *v.* Blood.

---

STEPHEN PERKINS, *Administrator de bonis non of* LOVINA WILSON v. FRIEND BLOOD.

*Arbitration.    Statute of Limitations.    Abandonment.    Ejectment.*
*Possession.*

By an agreement to arbitrate the matters in dispute in a contest for the possession of land, and that the defendant in possession should continue in possession pending the arbitration, the running of the statute of limitations would be interrupted while the possession so continued.

Where the defendant claimed an abandonment of the premises in controversy by the plaintiff's intestate, the declarations of the plaintiff's intestate, made in reply to an application to sell the premises, tending to rebut any presumption of abandonment, are admissable for that purpose.

*As against a prior actual possession not apparently wrongful,* a defendant in ejectment cannot set up an outstanding title in a stranger unless he connects himself with that title. The plaintiff's intestate had been in adverse possession of a lot granted to the first settled minister, *held,* that although no title had been acquired against the owner of the first settled minister's right, yet a good title was thereby acquired against a stranger in possession not claiming under that right.

The taking of a lease of a lot, granted to the first settled minister, from the county treasurer under the Act of 1852, No. 58, relating to public lands in unorganized towns and gores, is in law no abandonment of any right or title obtained by prior possession by the party so taking the lease as between him and a party who does not claim under the right of the first settled minister.

The first administrator of the plaintiff's intestate took a lease of the lot in controversy for the purpose of strengthening the right of his intestate, and upon his decease his administrators took possession of the same; *held,* that they thereby became trespassers and a judgment in ejectment against them by the defendant would not affect the right of the plaintiff's intestate.

EJECTMENT for lot No. 23, drawn to the right of the first settled minister in Goshen Gore; plea, the general issue, and trial by jury, September Term, 1861, PECK, J. presiding.

The plaintiff is administrator *de bonis non* on the estate of the intestate Lovina Wilson. The intestate died in 1851, and in March, 1852, a letter of administration on her estate was granted to David Holbrook. The defendant was in possession of the premises at the commencement of this suit, and had been in possession from sometime in 1857 down to the time of trial.

The plaintiff's evidence tended to show that in 1815, Mary Wilson, the mother of Lovina Wilson, took possession of the premises, moved on to the same, erected a house thereon, cleared and cultivated ten or fifteen acres, and continued to occupy under a claim of right and ownership in herself; that on the 22d day of December, 1829, she sold the premises in question to Lovina, in consideration that Lovina should support her; that on the same day Lovina sold the same to James Harvey, and took a mortgage to secure the purchase money.

It appeared that Lovina obtained a judgment for the seizin and possession of these premises in 1831, against Harvey, in an action of ejectment on his mortgage for the non-payment of the mortgaged notes; that Harvey occupied under his deed from its date to the date of the judgment, and that Lovina occupied the premises, by her tenants, claiming title thereto, from the date of the judgment against Harvey until some time in the Spring of 1838, when her brother, Joseph Wilson, moved on to the premises and resided there until he died in 1851. The plaintiff's evidence tended to prove that Joseph Wilson, while he occupied, occupied under Lovina as her tenant, recognizing her title and ownership of the premises.

It appeared that while Joseph occupied the premises, and for some time previous, Lovina lived in Massachusetts, having gone

there to work in a factory, and her mother resided there with her. There was no direct evidence that Joseph went into possession by her permission, or occupied under any contract with her, and no evidence that he ever paid any rent. It was claimed on the part of the defendant, that if Lovina Wilson or those under whom she claimed, ever had any possessory right, it was lost by abandonment after she went to Massachusetts, and while Joseph Wilson was in possession. The defendant's evidence tended to show that Joseph Wilson occupied the premises from 1835 or 1836 to the time of his death in 1851, and that he claimed to own the premises, and that his occupancy was adverse to Lovina's title and adverse to all the world.

It appeared that Joseph deeded the premises to James Wilson, his minor son, June 12, 1851, and that James occupied under a claim of ownership until he conveyed the same to the defendant, April 14th, 1853. The defendant's evidence tended to show that he immediately took possession under his deed.

It appeared that David Holbrook, as administrator of Lovina Wilson, in March, 1852, attempted to take possession of these premises, and was resisted by James Wilson, who was then in possession, and claimed the premises in his own right. The plaintiff's evidence, introduced under objection, tended to prove that David Holbrook and James Wilson then agreed to submit the matter in dispute, as to the right of the parties to the premises, to certain men then agreed upon, and to abide their decision, and that in the mean time James was to remain in possession. It appeared that no hearing was ever had before the arbitrators; and the evidence on the part of the defendant tended to show that James Wilson afterwards refused to submit the matter to arbitrators, and the fact of such refusal was not disputed. The court decided that this evidence, if true, would interrupt the running of the statute of limitations in favor of James Wilson, and admitted the evidence and instructed the jury accordingly. The defendant's evidence also tended to show that they never completed their agreement to arbitrate, and that they separated without any mutual understanding to submit to an arbitration. The court told the jury that if this was true, the

attempt to agree would have no effect to stop the running of the statute of limitations, nor in any way prejudice the defendant's rights.

It appeared that Holbrook, in July, 1853, as administrator of Lovina Wilson, took possession of the premises and occupied them, by tenants, until his death in 1855, when B. W. Bartholomew and D. K. Smith were appointed administrators of Holbrook, and finding a tenant of Holbrook in possession, they, as administrators of Holbrook, kept possession by tenants as Holbrook had done, until the present defendant obtained a judgment against them in an action of ejectment, and went into possession under a writ of possession. The plaintiff was notified of the suit and asked to defend it, but refused. This judgment was taken by consent without a trial. Both parties introduced a lease of these premises to Holbrook from the county treasurer of Caledonia county. Both Holbrook and the defendant applied for a lease, but it was granted to Holbrook upon a hearing by the treasurer. Upon request the court charged that the giving of this lease to Holbrook deprived the defendant of no rights that he previously had in the premises, and that the plaintiff could not recover by virtue of this lease. The further request and charge of the court as to the effect of this lease, upon the plaintiff's rights, appear in the opinion of the court. The lot in controversy was called "the minister's lot," it being a lot granted by charter to the first settled minister in the gore. There was some evidence tending to show that the intestate and her mother did not claim, while in possession, that they could hold the lot against the title of the first settled minister, but that they claimed it, and intended to hold it against everybody else. The plaintiff introduced, as a witness, one William Jenkins, who testified under objection that he tried to buy these premises of Lovina Wilson while Joseph Wilson was in possession, and could not buy them; and that she said that Joseph was very poor and sick, and was living on them, and she thought she should not sell them while he lived, but should let him live on them. The court decided that this was not admissible for the purpose of showing that Joseph was in possession under

Lovina, nor for any purpose except on the question of abandonment of her prior possession, and that it was admissible as tending to rebut the presumption of such abandonment, and admitted the evidence, and charged the jury accordingly,—to which the defendant excepted.

The defendant's counsel made the following requests to the court to charge the jury:

1. The plaintiff cannot recover unless he show that Lovina Wilson, at the time of her death, had a legal title to lot No. 23, described in the declaration.

2. The lot being admitted by the plaintiff to be a lot drawn to the right of the first settled minister, neither Mary Wilson, or Damon, or Perkins, could acquire any title to the lot by entry and occupation of the same against any person except some person who entered as tenant to them and then only by virtue of their rights as landlord.

3. That Lovina acquired no title to the lot by virtue of the deed from Mary Wilson to James Harvey, and by the mortgage from James Harvey to her, as the deeds admit the lot to be drawn to the right of the first settled minister.

4. Lovina gained no additional title to the lot by reason of the judgment, as Harvey had mortgaged to her, and had by deed admitted her title, he was estopped from denying it. This judgment gave her no title to the land as against any other person.

5. That the administrator of David Holbrook, being rightfully in possession of the lease and also of the land, the said Blood having commenced his action of ejectment against them, counting on the eviction by David Holbrook in his life time, and also on eviction by the administrators, and a final recovery in the suit, and the taking possession of the premises under the writ of possession, estops all persons claiming under Lovina Wilson, or under said lease, from ever contesting the rights of Lovina to said premises. And it is clearly so, as the proof shows that the present administrator was notified of the pendency of said suit, and asked to defend the same, which he refused.

6. That if the jury find that Joseph Wilson went there in 1835, and continued in the peaceable possession of the premises

for fifteen years, claiming it as his own, it gave him a good title to the lot against all the world, according to the acts of 1839.

7. That if Joseph Wilson went into possession of the premises in 1838, claiming the premises as his own, the entry of Holbrook in 1852, and fight with James Wilson did not interrupt the possession, as James never agreed to waive the statute of limitations. And Holbrook did not interrupt the possession by breaking and entering the house by force of arms, and being expelled from the same.

8. That if the jury find that Joseph Wilson entered into possession of the premises claiming them as his own,—if while so in possession he learned that Lovina was claiming title to the same,—if he applied to her to purchase her claim for the purpose of removing a cloud from his title,—if he also at the same time claimed to own the title to the land, this offer would not defeat his title to the premises.

9. If the jury should find that Joseph Wilson acknowledged the title of Lovina Wilson to the land, still if he deeded to his son James, by warranty deed, who had no knowledge of the admissions of his father, and James went into possession under his deed, he and his grantees in possession could hold the same against all persons who cannot show a good title to the same.

10. That if the jury find for the plaintiff they cannot recover the rents and profits from our improvements, they can only recover the rents on the portions cleared by Lovina and those under whom she claims made prior to 1838.

The first requst the court refused. To the second, the court charged that upon the evidence they might and should treat the lot as a lot granted by the charter and drawn to the first settled minister, as it seemed to have been so treated by counsel, and that being such, the statute of limitations did not apply to it, and Lovina Wilson and those under whom she claimed could not gain title to it by adverse possession, but would be bound to yield her claim to any one claiming under that title, but that she might, notwithstanding, gain such a right by prior possession against a stranger standing as defendant did, defendant not claiming under that title, as to entitle her adminis-

trator to recover.  As to the third and fourth requests, the court decided and so charged substantially as requested, that is, that by the deed from Mary Wilson to Harvey, and his mortgage to Lovina, and Lovina's judgment against him and taking possession under it, Lovina got no better title than Mary Wilson had before ; it placed her in the same situation as to the title, that her mother was when she deeded to Lovina, but that the possession of Harvey inured to the benefit of Lovina Wilson. As to the sixth and seventh requests, the court charged as requested.  As to the eighth request, the court charged as requested, but further told the jury that if Joseph, on any occasion, while in possession, admitted that Lovina owned the premises and recognized her title without claiming any title in himself, it tended to show that his possession was not adverse to hers.  And as to the ninth request, the court refused to charge as requested, but charged that an acknowledgment by Joseph Wilson of the title of Lovina, would be evidence against his grantees and those claiming under him, whether they knew of such acknowledgment or not.  As to the tenth request, the court charged as requested.

The defendant's counsel claimed that the judgment in favor of the defendant against Bartholomew and Smith was a bar as claimed in his fifth request.  The court charged otherwise, and instructed the jury that it was not a bar or an estoppel, and would not defeat the plaintiff's action or change the legal rights of the parties.

The court charged the jury generally upon all the facts arising in the case, and particularly as to the law applicable to gaining title by adverse possession, the right of recovery by virtue of prior possession, the effect of abandonment of possession, and what constituted an abandonment, which was satisfactory to defendant except in the particulars above detailed.

The defendant excepted to the refusal of the court to charge as requested, and to the charge so far as it is not in accordance with his request.

*Wing, Lund and Taylor*, for the defendant, insisted that the plaintiff in ejectment must recover on the strength of his own

title, not on the weakness of the defendant's.    The defendant
who is in possession of land under color of title, can defend in
ejectment by showing a clear outstanding title in a stranger.
*Henderson et al.* v. *Tennessee*, 10 How'd U. S. 311 ; *Hill* v. *Gelt-
ings*, 2 Har. & John. 112 ;    2 U. S. Dig. p. 135, §§ 392, 4, 6,
7, 8, 400, 1, 2 and 3 ;   *Rupert* v. *Mark*, 15 Ill. 540 ; *Jones* v.
*Scroggins*, 11 Georgia 119 ; 14 U. S. Dig. 208, § 19 ; *Norens*
v. ———, 17 Miss. (2 Bennett) 28 ; 14 U. S. Dig. 208 § 20.

*Dillingham & Durant*, for the plaintiff, claimed that Lovina
Wilson's declarations to William Jenkins were admissible for
the purpose indicated by the court.   *Holbrook et al.* v. *Murry et
al.* 20 Vt. 525 ; *Elkins* v. *Hamilton*, 20 Vt. 627.  The charge on
the defendant's first and second requests was correct.   *Ellithorp*
v. *Dewing*, 1 D. Chip. 141 ; *Hathaway* v. *Phelps*, 2 Aik. 84 ;
*Allen* v. *Rivington*, .2 Saun. 111 ; *Catteris* v. *Cowper*, 4 Taun.
546.   Holbrook's administrators were strangers to Lovina Wil-
son's estate.   They were trespassers when they meddled with
the land, and judgment in ejectment against them no more
binds her estate than if they had not been Holbrook's Adminis-
trators.   *Clapp Adm'r* v. *Beardsly*, 1 Aik. 168, 1 Vt. 151 ;
*Adm'r of North* v. *Barnum et al.* 10 Vt. 220, Gay's Case 5 Mass.
419 ; *Tingrey* v. *Brown*, 1 B. & P. 310.

KELLOGG, J.   The first ground of exception in this case which
was insisted on by the counsel for the defendant on the argu-
ment was the admission of testimony tending to show an agree-
ment between Holbrook, the former administrator of the plain-
tiff's intestate, and James Wilson, the defendant's grantor, for a
submission of the matters in dispute as to their respective rights
in the premises to arbitration, and that James Wilson should
continue in possession until a decision was made by the arbitra-
tors, and also the decision and charge of the court upon the evi-
dence so offered and received.   The court decided that the evi-
dence would, if true, interrupt the running of the statute of limit-
ations in favor of James Wilson ; and the defendant insists that.
the evidence ought not to have been treated as having this effect.

Perkins, Adm'r, v. Blood.

The testimony tended to show a contest between Holbrook and James Wilson for the possesion, and an agreement to submit their dispute to arbitration, and that in the mean time, or until the decision should be made by the arbitrators, the latter should remain in possession of the premises. So long as the possession of the premises by James Wilson was continued by the permission of Holbrook, there was no use or enjoyment of the premises which could be considered as being adverse to the right which he represented or claimed. The possession in such a case would continue by his acquiescence, and not against his will; and the occupancy, being by permission, would have no adverse character. The agreement of submission to arbitration related to the present rights of the respective parties at the time it was made; and this, in connection with the agreement that, pending the arbitration, James Wilson should remain in possession, can be regarded in no other light than·as an agreement that while this possession continued with the acquiescence and by the permission of Holbrook for this purpose, the rights of neither of the parties should be effected by it. The running of the statute of limitations would, while the possession was thus continued, be suspended or interrupted by the express agreement of the parties, and we find no error in the decision of the county court that this was the proper effect which should be given to the evidence, if it was believed. If the evidence had any tendency to establish this fact, it was clearly admissible; for the question to be determined by the jury was whether the possession of James Wilson was hostile or adverse to the right represented by Holbrook as administrator, or by the permission of Holbrook; and the evidence was pertinent and competent on the point. But it is objected by the defendant that the charge of the court on the plaintiff's proof on this point was defective because the court did not instruct the jury that if the defendant's grantor and those under whom he claimed had been in the actual and adverse possession of the premises more than fifteen .years at the time of making this agreement to arbitrate, then the agreement relied on as interrupting the running of the statute of limitations would have no effect upon the title acquired by such adverse possession.

The fact assumed in the statement of this objection does not appear in the bill of exceptions, but, on the contrary, it appears that the court charged the jury agreeably to the sixth of the defendant's requests, that if Joseph Wilson went on to the premises in 1835, and continued in the peaceable possession of the same for fifteen years, claiming it as his own, it gave him a good title to the lot against all the world, and also that the court charged the jury generally upon all the facts arising in the case, and particularly as to the law applicable to gaining title by adverse possession, and that the charge was not excepted to by the defendant on the ground of this objection. The objection must consequently be regarded as untenable.

The next exception insisted on by the defendant is that which was taken to the decision of the court admitting the testimony of William Jenkins in respect to the declarations of the plaintiff's intestate, Lovina Wilson, when the witness applied to her in 1849 for the purpose of buying the premises. The testimony objected to was that she said to the witness, on that occasion, that she would not sell the land,—that Joseph, her brother, who was then occupying it, and from whom the title of the defendant was derived, was very poor and sick, and was living on it, and that she thought she should not sell it while he lived, but should let him live on it while he lived. The court decided that this testimony was not admissible for the purpose of showing that Joseph was in possession under Lovina, nor for any purpose except on the question of abandonment of her prior possession, and that it was admissible as tending to rebut the presumption of such abandonment, and admitted the evidence and charged the jury accordingly. It appeared that Lovina or her mother had the prior possession, and that the right of her mother was transferred to her before her brother Joseph occupied or resided upon the premises; and it was claimed on the part of the defendant that this prior right was lost by abandonment by Lovina after she went to Massachusetts, and while Joseph Wilson was in possession. The loss of right or title by *abandonment* implies some act done, and must depend upon the acts or conduct of a party who has been in possession. The doctrine of abandonment is

usually applied to incorporeal hereditaments, and Prof. Washburn
in his recent treatise on the Law of Real Property expresses the
opinion that in no case can a man part with, or lose, title to the
land itself by any act or oral declaration of abandonment, unless
it comes within the category of estoppel, or is followed by such
a possession by the person claiming title thereto in his stead as
brings the case within the statute of limitations.   2 Washburn
on Real Property, 453, 457.   The declarations of Lovina Wil-
son which were objected to relate to the point of abandonment as
made by the defendant on the trial, and, being made in reply to
an application to her to sell the land, are so connected with her
conduct in respect to her possession or claim, and tend so directly
to qualify or explain her connection with thee possession, as to
warrant their admission as part of the *res gestae;* and, as such,
they were proper to be considered as tending to rebut any pre-
sumption of abandonment by her of her prior possession.   1
Green'l Ev., § 108, *et seq.; Holbrook et al.* v. *Murray et al.*, 20 Vt,
525 ; *Elkins* v. *Hamilton et al., ib.* 627.

The defendant requested the court to charge the jury that the
plaintiff could not recover unless he showed that his intestate had
a legal title to the lot at the time of her death, which the court
declined to do.   It has been settled by repeated decisions in this
court that actual prior possession, not apparently tortious, will
furnish a *prima facia* case for the plaintiff in ejectment.   *Elli-*
*thorp* v. *Dewing,* 1 D. Chip. 141 ; *Hathaway* v. *Phelps,* 2 Aik.
84 ; *Doolittle* v. *Linsley, ib.* 155 ; *Warner, Adm'r* v. *Page,* 4 Vt.
291 ; *Russell* v. *Brooks,* 27 Vt. 640.   And the charge of the
court was in accordance with this principle.   This. rule seems
to be confirmed by modern English authorities.   Note *a,* to case
of *Allen* v. *Rivington,* 2 Saund. 5th Ed, by Patteson and Wil-
liams, 111.   Thus, in *Doe* v. *Dyeball,* 3 C. & P. 610, (14 E. C.
L.,) ejectment was brought to recover possession of a room in a
house—the defendant had forcibly taken possession of the house,
The plaintiff proved a lease to him of the house and a year's pos-
session, and rested his case there.   It was objected that no title
was proved in the demising parties to the lease, but, *per* Lord
TENTERDEN : " That does not signify ; there is ample proof ; the

Perkins, Adm'r, v. Blood.

plaintiff is in possession, and you come and turn him out:—you must show your title." It is obvious that this principle would not be of any benefit to a plaintiff in ejectment if the defendant could set up an outstanding title in a stranger. And as early as the case of *Hathaway* v. *Phelps, ubi supra,* it was questioned by SKINNER, C. J., whether it was competent for a defendant in ejectment to set up against the disseizee an outstanding title in a stranger. In *Proprietors of Braintree* v. *Battles,* 6 Vt. 395; PHELPS, J., says that, " the main reason why the evidence (of an outstanding title,) is to be regarded as immaterial is, that the defendant does not connect himself with that title." In *Russell* v. *Brooks, ubi supra,* it was held that where the plaintiff had both the record title and possession of a piece of land, of which he was dispossessed, his right to repossess himself of it by an action of ejectment could not be resisted by the dispossessor on the ground that the plaintiff had conveyed the premises to a third person by a deed never recorded and subsequently destroyed, when there is no privity whatever between the defendant and such third person. We think that the cases referred to distinctly indicate and adopt the principle that, *as against a prior actual possession, not apparently wrongful,* a defendant in ejectment cannot set up an outstanding title in a stranger unless he connects himself with that title, and that the rule that the plaintiff in ejectment must recover by the strength of his own title, without any regard to the weakness of the defendant's, must be taken subject to this qualification. And the rule of decision upon a similar question in the case of *Townsend* v. *Estate of Downer,* 32 Vt. 183, is not inconsistent with this principle, because the plaintiff in that case did not rely upon a prior actual possession as a ground of recovery. In this respect, that case may be distinguished from the present, and the outstanding title was there relied upon as a defence *to* and not *against* the actual possession. It is a settled rule of property, that possession gives the possessor a right against every person who cannot show a better title, and the right arising from an actual possession ought not to be defeated except by a superior right. In an action of ejectment under the statute, the plaintiff recovers according to his right,

and the judgment is conclusive only as against the parties, their heirs and assigns. The judgment is for the possession as well as the title, and in a case where the plaintiff had a prior actual possession the question would be not as to the absolute title of the plaintiff, but as to his right relatively to the defendant. We are accordingly of opinion that the defendant was not entitled to a charge to the jury, that the plaintiff could not recover without showing that his intestate at the time of her death had a legal title (understanding by this an absolute legal title,) to the premises. It was true that the absolute or paramount title to the premises was not vested in the plaintiff's' intestate by virtue of any adverse possession by her, or by those under whom she claimed; and that her title by occupancy and possession was subordinate to the title granted by the charter to the first settled minister, and would yield to that title whenever it was asserted; but the defendant did not claim under that title, and was a stranger to it. As between the plaintiff's intestate and the defendant, her prior actual possession, if established, would prevail, and the plaintiff as her administrator would be entitled to recover. In respect to the right of recovery by virtue of a prior possession, and the effect of an abandonment of the possession, it appears that the court gave such instructions to the jury as were satisfactory, and we find no error in the ground upon which the case was put to the jury upon the points indicated in the defendant's first and second requests.

The defendant excepted to the ruling and charge of the court in respect to the effect of the lease executed by the county treasurer of the county of Caledonia to Holbrook. It appeared that the plaintiff's intestate died in 1851, and that Holbrook was appointed administrator of her estate in March, 1852,—that Holbrook died in 1855,—and that the plaintiff was appointed administrator de bonis non, of the intestate, on the 17th of March, 1856. The lease referred to was executed to Holbrook as administrator on the 1st of May, 1853, and is a lease of the land in controversy for five years from that date for the yearly rent of four dollars and fifty cents, and was executed under the provisions of the Act of 1852, relating to public lands in unorganized

towns and gores; (Acts of 1852, No. 58.) · There was no pro-
vision, until the passage of this Act, for the care or disposition
of public lands in such towns and gores. The defendant insisted
that the taking of this lease was, in law, an abandonment on the
part of Holbrook of all right and title which the intestate, or he
as her administrator, had in the premises, and of all right and
benefit of any possession which she, or those under whom she
claimed, previously had; and the court held that this would be·
so· as between the plaintiff and the treasurer, or any one claim-
ing under him; and also as between the plaintiff and the ·pro-
prietor of the first settled minister's right or any one claiming
under that title; but that as to the defendant, it would not be so,
because he did not claim under that title or right,—though, as
between these parties, it was evidence of such abandonment, but
not conclusive, and that if Holbrook, in procuring and taking the
lease, did not intend to abandon any claim he then had in his
representative character as administrator, but only took the lease
to strengthen his claim, the taking of the lease would not affect
any right of possession which his intestate, or he in her right, or
those under whom she claimed, previously had as against this
defendant or any person who did not claim under the title of the
right of the first settled minister or the county treasurer,—but
that if he did abandon the previous possession, the plaintiff could
not recover. The defendant insists that the taking of this lease
was, in law, an abandonment of any right under the prior posses-
sion of the plaintiff's intestate, not only as between her right
and the right of the first settled minister, but also in respect to
all others, whether claiming under the right of the first settled
minister or not. The only question which this part of the case
presents for consideration is, whether the defendant, being a
stranger to, and having no connection with, the right of the first
settled minister, can claim any advantage or privilege under it.
For reasons already stated, we do not consider him at liberty to
set up the outstanding title of that right, while he is a stranger
to it, against the prior actual possession of the plaintiff's intes-
tate by way of defence, and the same reasons are equally con-
clusive against allowing him to stand upon or assert any advan-

tage, presumption, or privilege belonging to the right of the out-standing title, so long as he does not connect himself with that right. The question which the defendant is entitled to raise on this part of the evidence is one of fact, and not of law, and is this :—whether Holbrook, in procuring and taking the lease intended to abandon the claim which he then had as administra-tor, or not ; or whether he only took the lease for the purpose of strengthening his claim to the possession of the premises. The procuring and taking of the lease is consistent with either purpose, though perhaps it should be regarded as *prima facia* evidence of his purpose to abandon his previous claim ; and, as a question of fact, it was submitted to the jury to find what his intention was in procuring and taking the lease. The defendant claims that, as Holbrook was dead, there was and could be no proof to show his intent, beyond the naked fact of his procuring and taking the lease. But the intent with which an act was done may be inferred from the situation and conduct of the party, and the accompanying circumstances of the case ; and, indeed, this would be the only possible evidence to which resort could be had after the decease of the party. Even, if living, his testimony under oath in respect to his intent in any particular act might be impeached by his conduct and the surrounding circumstances of the transaction, and would not, of itself, be conclusive. We can-not say, therefore, that there was no proof upon this point to be submitted to the jury, as claimed by the defendant, and we are satisfied with the instructions which the court gave to the jury on this question. The jury having found that Holbrook did not intend to abandon the previous possession when he procured this lease, but took the lease only for the purpose of strengthening his claim, the right which the plaintiff represents, arising from the prior possession, is not affected as against this defendant by the procuring and taking of that lease, and the case is to be treated so far as the defendant is concerned the same as if that lease never had existed. The previous title or interest of the intestate remained the same as before, as to all persons except those claiming in the right of the first settled minister ; and, as to strangers, there was no merger of her previous right or interest in the title under the lease. The interest acquired by the lease

was, as to strangers, no new interest, chattel or otherwise, but was merely ancillary to her previous right.

The defendant insisted on the trial that the judgment in his favor against Bartholomew and Smith was a bar, by way of estoppel, against all persons claiming under Lovina Wilson, the intestate, or in her right, or under the lease ; but the court instructed the jury that it was not a bar or an estoppel, and would not defeat the plaintiff's action, or change the legal rights of the parties.   It is claimed that this instruction was erroneous.   The jury have found that Holbrook took the lease merely for the purpose of strengthening the right of the intestate, and with no purpose to acquire title in his own right.   The case of Administrator of *North* v. *Barnum and Rich*, 10 Vt. 223, is a decisive authority for the proposition that an administrator of an estate cannot be permitted to purchase in for his own benefit an outstanding title to land of which his intestate died seized in fact, claiming title ; and that the title acquired by the administrator by possession or purchase would enure for the benefit of the estate.   Holbrook having neither acquired, nor attempted to acquire, any personal or individual right under the lease, his administrators had nothing whatever to do with the premises as his representatives, and they became trespassers in taking possession of the land.   In no sense were they the representatives of the estate, or right of Lovina Wilson, and they were as much strangers to the title as they would have been if they had not been Holbrook's administrators.   The judgment in ejectment in favor of the defendant against them did not affect the right of the plaintiff's intestate, because they did not represent that right, and were not in privity or connection with it.   No authorities are necessary to support the principle that a judgment binds only those who are parties, or privy in interest with the parties.

The conclusions above expressed dispose of all of the points made by the defendant on the argument.   There are other questions which arise upon the exceptions, but have not been insisted on.   We find no error in the conduct or theory of the trial, or in the rulings and charge of the court, and the judgment below in favor of the plaintiff is consequently affirmed.