S. D. HOLLISTER, ADMINISTRATOR OF HENRY H. BARROW'S ESTATE,
v. WILLIAM YOUNG.

*Evidence. Statute. (Gen. Sts., p. 327, § 24.) Adverse
Possession.*

Where one claims title by adverse possession for the required period under a claim
of ownership, it is competent for him to show that while he occupied he asserted
ownership by bringing an action of trespass against others who attempted to enjoy
the premises, and prosecuted it to a final adjudication. For this purpose he may
put in evidence the record of such suit, and the proceedings therein, under instruc-
tions that it was not evidence of the title, but was evidence tending to show that
he was claiming the land now in dispute.

Where an action is brought by an administrator as such, the defendant is a compe-
tent witness to a contract in issue in such suit made with a person living and
competent to testify. The words "contract in issue," as used in the statute, mean
the same as contract in dispute or in question, and relate as well to the substan-
tial issues made by the evidence as to the merely formal issues made by the
pleadings.

EJECTMENT for lot No. 4 in the 9th range in the town of
Marshfield. Plea, the general issue and notice. Trial by jury,
September term, 1868, PECK, J., presiding. Verdict for the
defendant.

The plaintiff, to support the issue on his part, offered certified
copies of the following deeds, which were duly recorded in the
town of Marshfield, to wit: Silas Pepoon to Joseph Byrd and
John Barrow, dated January 8, 1800; Joseph Byrd to John
Barrow, dated March 30, 1816; John Barrow to Henry H. Bar-
row, dated December 5, 1832. Henry H. Barrow died April 6,
1863, and the plaintiff was duly appointed administrator on the
said Henry H. Barrow's estate, February 22, 1867. The plain-
tiff introduced his own testimony, tending to prove that on the
17th day of June, 1851, Henry H. Barrow, the deceased, was
living in the city of New York, and that on that day he came to
Marshfield to look after the said lot, No. 4, and other lots he
claimed to own in the town of Marshfield; that the plaintiff
and the defendant and Barrow went on to the said lot in
dispute, which was then a wild lot of land, and the said Barrow,
then and there on the land, inquired of the defendant if any one

had cut timber on the said lot, and he replied there had not been any cut to his knowledge ; that the defendant went and pointed out the lot to Barrow, the defendant knowing that Barrow claimed the lot ; that the next day at Plainfield said Hollister purchased said lot No. 4, now in dispute, with other lots, of Barrow, and paid a part and gave his note for the balance, signed by him and his brother, S. R. Hollister, but no deed was executed of the same ; that in September, 1851, before the plaintiff had given up his contract with Barrow, the said S. D. Hollister employed the defendant to look after the said lot No. 4 in the 9th range for him, and notify him if any one was trespassing on his lands, which he agreed to do, the said defendant claiming lot No. 3 adjoining it in the same range ; that in October, 1851, Henry H. Barrow, finding there was a person claiming to be in possession of one of the lots contracted to the said Hollister, with the consent of the said Hollister vacated the contract of sale and employed the said Hollister as his agent to sell and dispose of his lands in Marshfield aforesaid ; that in December, 1851, said Hollister contracted with one D. P. Spencer to sell the lot to him when he could get a deed to him of the lot, that until that time he was to go into possession of the lot, pay the taxes and occupy the same ; that in pursuance of said contract, the said Spencer entered on the said lot and cut timber several years, two or three times in different years, on the same ; that he cut considerable lumber on the lot in the winters of 1851-2, and years after up to 1862, but not every year ; that in the winter of 1851-2, the defendant came six miles on foot to notify him that D. P. Spencer was cutting timber on said lot ; that the same spring the defendant asked leave of the plaintiff to cut twenty-five or thirty trees on the said lot, which was granted him ; that as late as 1862, the defendant tried to buy the lot of the plaintiff, and never made any claims to the lot until 1862.

The testimony of D. P. Spencer was to the same effect as to his occupancy, and that the defendant made no complaint about the same.

The plaintiff claimed title to the lots by virtue of his deeds and possession under them from 1851.

The defendant also claimed title to the lots, by possession prior

to the plaintiff's possession, and during the time the plaintiff claimed to be in possession.

The plaintiff also testified, on cross examination, as follows :

" I have a deed of this lot that is on record, from Henry Barrow and Elizabeth Barrow, (she is widow of Henry H. Barrow,) Mary K. Barrow, and Henry Barrow, executor. It is from the executor and sole heir of Henry H. Barrow and his widow, so that I have the sole title of the deceased. Deed dated January 30, 1864. It conveys the three lots spoken of here. This deed was after the commencement of the suit, William Young against Spencer, (referring to the suit of William Young against Silas Spencer and Bemis). I suppose that suit was then pending. I got my deed before that suit was finally determined."

The plaintiff also testified as follows :

" I took out letters of administration in this case for my own benefit. The estate has no interest in the suit. The expense of letters of administration is at my expense. At the time I bought this lot of the heirs, I knew William Young was claiming this lot ; 1 knew in 1863 he was claiming it ; I think I had heard before 1863 that he was claiming it ; I think I heard about 1862."

The testimony on the part of the plaintiff tended to show that very soon after the arrangement was entered into between Hollister and Daniel P. Spencer, Daniel P. Spencer took Moody Bemis in with him as jointly interested with him in that contract, and that soon after Silas Spencer, by procurement of Daniel P. Spencer, acted in connection with the said Bemis in entering upon and cutting timber from the said lot, as heretofore stated ; and on cross examination of the plaintiff, Hollister and Daniel P. Spencer, that Young, this defendant, brought a suit in the county court against the said Moody Bemis and Silas Spencer, in trespass on the freehold for such entry and cutting, and that it was tried before a referee, and that Bemis and Spencer defended that case under the same title and possession that the plaintiff relies on in this case, connecting themselves with the title and possession this plaintiff relies on, by the aforesaid arrangement and contract between Hollister, as agent of Henry H. Barrow, and Daniel P. Spencer, and showing that Bemis and Silas Spencer acted under

Daniel P. Spencer, and that Daniel P. Spencer participated in that defense in that suit, and that Hollister, this plaintiff, was a witness and testified in behalf of the defense in that suit; but the said Hollister testified in this case that he took no part in the defense of that suit.

The evidence on the part of the defense tended to contradict the evidence on the part of the plaintiff, and tended to show that the defendant, who occupied the adjoining lot, entered upon the lot in dispute in this suit as early as twenty-four years ago, claiming it, and from that time down to the present had possession of it, claiming it as his own, and during that time tapped trees upon it and made sugar, and from time to time during that whole period, nearly every year, cut timber upon it for various purposes, and tending to show that during that whole period of time he was in the continuous adverse possession of the lot claiming it as his own, that he never abandoned his possession or claim, nor ever acknowledged the title or right of Barrow or Hollister, or any one claiming under them or either of them, and never acted as agent or agreed to act as agent of any one in reference to this lot. The defendant, among other evidence in defense, offered the record and proceedings in the suit above mentioned, William Young against the said Bemis and Silas Spencer, ultimately decided in the supreme court, accompanied by the writ in that case. Immediately after it was introduced the counsel for the plaintiff objected to it as evidence in the case, and the court decided that the objection came too late as an objection to its admissibility, and that it must be received, subject to whatever question may properly be raised as to its legal effect.

The defendant's counsel offered the defendant as a witness in his own behalf. The plaintiff's counsel objected on the ground that the other party (Henry H. Barrow) was dead. The court decided that the defendant was a competent witness so far as to the contract Hollister had testified to as made by him with the defendant, (after Barrow left,) while he, Hollister, had the contract with Henry H. Barrow, and before it was given up, as Hollister, the person with whom the contract was made, if any, was still living and could testify and had testified, and that

whether he could legally testify any further than that must be decided as his testimony progresses, if objection shall be made. To this decision the plaintiff's counsel excepted. The defendant then testified, and no further exception was taken by the plaintiff's counsel to any ruling of the court in relation to the defendant's testimony.

In relation to the record of the suit, William Young against Spencer and Bemis, the plaintiff's counsel requested the court to charge the jury that the recovery by Young, (this defendant,) against Bemis and Spencer, could not be received as evidence. The court did not so charge, but told the jury that as a *decision* or an adjudication, it was no evidence in favor of the defendant's title, or against the title, or the right of the plaintiff, but that it was evidence of the fact that this defendant commenced and prosecuted such a suit, and that the only effect it could have in the case was as tending to show that he was claiming the land now in dispute. The plaintiff's counsel excepted to the refusal of the court to charge as requested, and to the charge as given, so far as it allowed the jury to treat that record as evidence of any fact in the case.

*J. A. Wing,* for the plaintiff.

*J. P. Lamson,* and *Heaton & Reed,* for the defendant.

The opinion of the court was delivered by

STEELE, J. I. In order for the defendant's possession to ripen into title, it must have been under a claim of ownership. To prove that he occupied under such a claim it was competent for him to show that while he occupied he asserted ownership by bringing his suit of trespass against others who attempted to enjoy the premises, and not only that he brought the suit, but also that he persisted in his claim by prosecuting it to a final adjudication. It is immaterial which way that case was decided, but it is not immaterial that it was prosecuted until a decision was reached, and any proper proof of the fact of a decision would almost necessarily carry with it information as to what the decision was. The

language of the court, that the *only* effect of the evidence in the defendant's favor was to show that he was claiming the land in dispute, limited the evidence to its true use and purpose. There is nothing showing that any point or request was made in the county court that the court should more definitely state at what time the suit indicated a claim of right by the defendant. We see no error, either in the admission of this evidence, or in the charge of the court in respect to it.

II.   By the statute the defendant was generally disqualified as a witness, the action being ejectment in favor of an administrator, as stated fully in the exceptions. The question is whether he comes under the operation of the statutory exception to the general disqualification in such cases. He was offered and received as a witness with respect to a contract, the other party to which " was living and competent to testify." This brings him under the benefit of the exception, unless that exception is interpreted as relating only to contracts put in direct issue by the pleadings. Such an interpretation would be too narrow. The words " contract in issue," as used in the statute, mean the same as contract in dispute or in question, and relate as well to the substantial issues made by the evidence, as to the merely formal issues made by the pleadings. It is not the object of the statute to shut the mouth of the defendant as to contracts made with parties still living, and competent to testify.

The judgment of the county court is affirmed.