ROEBKE VS. ANDREWS.

EVIDENCE: (1.) *Admission of evidence called out by appellant on cross-examination.* (2–5.) *Declarations of party in possession of property—when and how far evidence of his title.* (6, 7.) *Proof of agency.*

1. Appellant cannot allege as error the admission of evidence called out by his own counsel on cross-examination of respondent's witnesses; but may ask instructions as to its proper effect.
2. Possession of property *under claim of title* being *prima facie* proof of title, declarations of the possessor, made at the time of his possession, showing that he claimed title, may be put in evidence to explain the character of his possession, when his title is in controversy.
3. Such declarations are, however, not evidence of any facts therein stated as the basis of such claim of title.
4. It was not error, in such a case, after evidence of respondent's declarations had been received, to refuse an instruction that such declarations, made in appellant's absence, "were no evidence of title in this case;" such instruction having an obvious tendency to mislead the jury to suppose that the evidence was not to be considered at all in connection with the question of title.

5. If appellant desired to restrict the effect of such evidence, he should have asked an instruction that it was to be considered only as evidence that respondent's possession was under claim of title.
6. Where A., in making a purchase, professes to act as agent for B., this is not proof of such agency.
7. But where B. subsequently pays part of the purchase money, and draws a bill of sale in which he purports to be the purchaser, the fact of the agency and the nature of the contract made may be submitted to the jury upon the whole evidence, including the declarations of A. at the time of negotiating the purchase.

Per DIXON, C. J., dissenting.
1. It was error for the court to refuse to instruct the jury that the *mere statements* of the plaintiff were *no evidence of the title.*
2. The possession of property is not a fact that entitles the party holding it to give his own declarations in evidence, either to establish his title, or to disprove the the title asserted against him.  Such declarations are wholly inadmissible in all actions where the inquiry is immediately into the title, or into the facts going to constitute the title, and to show who has it, and where the nature of the issue is such as to require *direct* proof of the title or of the facts constituting it.  *Knapp v. Schneider,* 24 Wis. 70 ; *Kelley v. Kelley,* 20 id. 443, and *Meade v. Black,* 22 id. 241, cited and examined.
3. The declarations of persons in possession of property, *explanatory* of their possession and of the title *claimed* by them, are admissible in evidence in their behalf and in behalf of those claiming under them, to show the *character* of their possession, in those actions where such *character* becomes material and necessary to be shown, but *then* only for that purpose and *not as any evidence of title.*  Actions of that class are generally, if not always, such as arise under the statutes of limitation, where the question is whether the possession has been *adverse,* so as to cut off the title and bar the remedy of the opposing claimant. In such cases the direct question of title does not arise, the inquiry being merely as to the *character* of the possession and the period of its continuance ; and the declarations are properly received as evidence of the *intention* or *claim* of the parties holding the possession, since it is upon that the *character* of their possession depends.   Some exceptions to this rule, as when the possession is shown to have been *permissive,* or to have been commenced or held in subordination to the will or title of another, noted.
4. The possession of property, unqualified and unexplained by proof of other facts and circumstances, is *prima facie* evidence of title or ownership in the possessor.
5. The declarations of a party in possession of property *against his interest* or *in disparagement of his title,* and showing that he has a *less* estate or interest than that presumed by law from the fact of possession, or has no estate or interest beyond the mere present possession, may be given in evidence *against* him and *against* the title claimed by or under him ; but his declarations in favor of his own title or of the title claimed through him are inadmissible.
6. The declarations of a vendor, remaining in possession of property, after the period when, in the ordinary course of trade, it should have passed to the possession of the vendee, are admissible in evidence against the vendee on the question of fraud, upon the principle of conspiracy

or combination to defraud, and because of the great latitude allowed in the introduction of evidence in cases of fraud and simulation.

7. The other cases, constituting exceptions to the general rule excluding declarations and hearsay, are where the declarations are part of the *res gestæ*, and where they are made to the opposite party or in his presence and hearing, and are not denied, or are assented to, by him, and cases involving questions of boundary, reputation, pedigree, marriage, custom and prescription. The possession of property does not form an exception to the general rule, so as to let in the declarations of the person having it in his favor, except where his *intention* in holding it is material and the *character* of his possession requires explanation.

8. The authorities for these several propositions collected, examined and distinguished, and the principles discussed.

APPEAL from the Circuit Court for *Winnebago* County.

Action by *Amandus Roebke* against *George R. Andrews,* for an amount alleged to be due on the purchase money of a yoke of oxen which the plaintiff avers that he sold and delivered to defendant, January 15, 1868. The defense was, that the plaintiff never owned the oxen, and that the defendant never purchased them. Plaintiff testified that he bought the oxen in question of one Elmer, and paid his own money for them; that he took them home and kept them on his farm one year; that defendant sent out a man named Speck, to buy the cattle, and gave a receipt stating that he had bought them; that witness saw Speck the day before the sale to defendant. He was then permitted to testify, against objection, that Speck said, on that occasion, that the defendant had sent him out to buy a yoke of cattle. On cross-examination he testified that the oxen were at the farm of his father, Henry Roebke, at the time of sale, because he (witness) had no buildings on his own farm. Henry Roebke, the father, testified also that plaintiff bought the cattle of Elmer, and paid his own money for them; that Speck came to witness's place; that plaintiff went out with Speck to show him the cattle, and they then returned to the house. He was further allowed to testify that Speck then said

that defendant wanted to buy the cattle. An objection to the evidence, on the ground that Speck's agency had not been shown, was overruled. It appeared that after the price of the cattle had been agreed on, there was hesitation about delivering them to Speck, who did not have with him money to pay for them; and on the next day, one Schuman came to the house where the Roebkes lived (on the father's farm), to assist in the negotiation; and witnesses for the plaintiff were allowed, against objection, to testify that Schuman endeavored to induce the Roebkes to drive the cattle into Oshkosh, where defendant lived, assuring them that defendant had sent him out, and, would certainly buy the cattle. It appeared further that Henry Roebke drove the cattle into Oshkosh, and there saw defendant, who paid him $12.50 on the purchase price, said he had paid the other $200 to Schuman, and gave him a paper to sign, which witness signed but did not return to defendant, and which was as follows: "Mr. George R. Andrews bought of Henry Roebke one yoke of oxen, $212.50. Received payment in full, January 15, 1868. HENRY ROEBKE." On application to Schuman for the $200, he claimed to have bought the cattle himself, and to hold a note against Henry Roebke, on which a certain amount was due, and offered only to pay the balance. The testimony for the defendant tended to show that he never authorized any one to purchase the oxen in his name. As to the ownership of the property at the time of the sale, several members of Henry Roebke's family, including a man who had lived and worked with him during a part of the year preceding said sale, were permitted, against objection, to testify that the plaintiff "exercised control and ownership" over the cattle. Being asked, on cross-examination, how they knew that plaintiff owned the oxen, they replied that he told them so. Plaintiff's mother was asked whether she ever heard any one else than the plaintiff claim

the cattle; an objection to the question was overruled; and she answered that "nobody else ever claimed them." Mr. Elmer, for the plaintiff, testified that he sold the oxen to the plaintiff and his father; that both came together to buy them, and "both talked in making the bargain," and he did not know which bought them; that in the first instance the father offered him the money, but on account of some disagreement he refused to receive it; that subsequently, the cause of disagreement being removed, plaintiff counted out the money, but witness thought it was taken from a pocket-book which had been handed to plaintiff by his father. There was evidence for the defendant tending to show that plaintiff, at sundry times before the alleged sale to defendant, had represented the oxen as belonging to his father, and that, at the time of such sale, they were treated by all parties as the property of the father, and plaintiff made no claim to them.

The court instructed the jury that if the plaintiff was the real owner of the oxen, he might recover of the vendee, notwithstanding the whole transaction was in the name of Henry Roebke, if the latter was authorized by the owner to sell the cattle for him; that the receipted bill of sale was not conclusive evidence of any fact stated in it, but might be contradicted or explained by parol; that if Henry Roebke owned the cattle, or if Speck or Schuman purchased them, and defendant had nothing to do with the purchase except to furnish the money to either Speck or Schuman, plaintiff could not recover. The following instruction, asked by defendant, was then refused: "Mere statements made by the plaintiff to his father, mother, sister or neighbors, as to the ownership of those cattle, in the absence of the defendant, is no evidence of title in this case."

Verdict and judgment for plaintiff; and defendant appealed.

*Earl P. Finch,* for appellant:

1. The declarations of Schuman or Speck, or of both of them, were not competent evidence to prove that they were agents of the defendant. *Scott v. Crane,* 1 Conn. 225; *Plumsted's Lessee v. Rudebagh,* 1 Yates, 502, 505; *James' Lessees v. Stookey,* 1 Wash. C. C. 330. To make them competent, the agency should first have been established. 1 Conn. 255; 3 Cush. 517; 1 Gray, 145; 5 Md. 133; 1 Wis. 26; *Davis v. Henderson,* 20 Wis. 522. 2. It was error to admit evidence of the acts and statements of the plaintiff, in the absence of the defendant, and for a year prior to the sale of these cattle, to establish ownership in him. *Gay v. Fretwell,* 9 Wis. 192; 11 id. 105.

*Jackson & Halsey,* for respondent:

1. What Speck and Schuman said is admissible in evidence as part of the *res gestæ. Hadley v. Carter,* 8 N. H. 40; *Sessions v. Little,* 9 id. 271; *Pool v. Bridges,* 4 Pick. 378; 11 id. 309; 24 id. 242; 1 Met. 242; 3 id. 199; *Mitchum v. The State,* 11 Ga. 615; *Eastman v. Bennett,* 6 Wis. 232; *Bates v. Ableman,* 13 id. 644; 1 Phillips on Ev. C. & H's Notes (5th Am. ed.), *185, and cases there cited; Starkie on Ev. [78]–[79]; 1 Greenl. Ev. §§ 108, 109. 2. Declarations of a party in possession of property, real or personal, are always admissible to show the character of such possession. *Brazier v. Burt,* 18 Ala. 201; *Clealand v. Huey,* id. 343; id. 822; 19 id. 722; *Marcy v. Stone,* 8 Cush. 4; *Kelley v. Kelley,* 20 Wis. 443; Starkie's Ev. 89; 1 Greenl. Ev. § 109, and cases there cited.

PAINE, J. The fact that the statements of the plaintiff that he had bought the cattle, were called out on cross-examination by the defendant's counsel, is a sufficient answer to any claim of error in admitting those statements in evidence. The only question presented in respect to them is, whether there was error in refusing the instruction asked by the defendant that " the

mere statements of the plaintiff to his father, mother, sister or neighbors, as to the ownership of those cattle, in the absence of the defendant, are no evidence of title in this case." This involves the question, to what extent and in what instances a party's declarations may be given in evidence in his own favor. The general rule, that a party cannot make evidence for himself by giving his own statements as proof of the facts stated, is of course familiar. But another rule is equally familiar, that wherever the nature and character of an act done by any person are in question, what he says at the time in relation to it is admissible as original evidence, as a part of the act itself, or, as the law terms it, a part of the *res gestæ*. This rule is one of very wide and constant application. And to exclude such statements upon the ground either that they were mere hearsay, or that they were the declarations of the party who offered them, would be to deprive courts and juries of a most material part of the elements essential to an intelligent appreciation of human conduct. The applicability of this rule to any single act or transaction not continuous in its nature, is apparent and free from difficulty. I think it equally applicable to any act or fact of a continuous nature, like that of the possession of property, though its application in such cases may require more care and discrimination in defining its extent. The law gives to the possession of either real or personal property *under a claim of title*, the effect of being *prima facie* evidence of title. It is sometimes briefly stated, that possession is *prima facie* evidence of title. But when so stated, it is always implied that the possession is under a claim of title. It is that fact which gives to it its character and legal effect. The rule was fully and accurately stated by this court in *Austin v. Allen*, 6 Wis., 134, in which case title to real estate was proved by possession and claim of title. It may be that on proof of possession merely, the law, in the absence of

any further proof, would presume that the party claimed a perfect title. This, in many cases, would be utterly inconsistent with the truth. But even if, for the sake of certainty, such a rule exists, it surely cannot have the effect of prohibiting actual proof as to what title the party did claim. And if there is any such legal presumption, it would seem to furnish a sufficient answer to any apprehended danger from allowing a party to prove that he claimed title; for such proof would show nothing more than the law would presume without it. The case of *Ricard v. Williams*, 7 Wheat. 59, seems to limit the presumption from mere possession to the rightfulness of that possession. For although it was a material question in the case, what title a party had who died possessed of the land, the court decided that they could not hold that he had an estate of inheritance, because there was no proof what estate he claimed. Upon the general question of the effect of possession, the court say: "Undoubtedly, if a person be found in possession of land, claiming it as his own in fee, it is *prima facie* evidence of his ownership and seizin of the inheritance. But it is not the possession alone, but the possession accompanied with the claim of the fee, that gives this effect by construction of law to the act of the party. Possession *per se* evidences no more than the mere fact of present occupation by right; for the law will not presume a wrong; and that possession is just as consistent with a present interest under a lease for years, or for life, as in fee. From the very nature of the case, therefore, it must depend upon the collateral circumstances what is the quality and extent of the interest claimed by the party; and to that extent, and to that only, will the presumption of law go in his favor. And the declarations of the party while in possession, equally with his acts, must be good evidence for this purpose." This is a clear and reasonable exposition of the subject. And it is thus seen

that wherever title is sought to be proved by possession, the claim of title accompanying that possession is not only proper but material and necessary to be known. And inasmuch as every person whose title is in issue is permitted to make out a *prima facie* case by proving possession if he chooses, he must also be allowed to give character and effect to that possession by proving what title he claimed in connection with it. The immediate point of inquiry is, what title was claimed, and not what really existed. And, that being so, inasmuch as what a man claims consists of what he asserts and declares in respect to his rights, his declarations are original evidence of the fact. And to allow him to prove them for that purpose, is no more liable to the objection of allowing him to manufacture evidence for himself by his own statements, than it would be, where it became material to prove a particular demand or notice, to allow him to prove his own declarations containing such notice or demand. The very nature and object of the inquiry establish the limit to the effect of his declarations as evidence. They are evidence only to show to what extent he claimed title. And so far as they go beyond that, and assert any facts in regard to the title, they are not evidence of such facts. To this extent, I think, the authorities fully establish the rule, and justify the broad remark of the supreme court of Pennsylvania in *Duffey v. The Presbyterian Congregation* (48 Pa. St., 51), "that the declarations of a person in possession of land are always received as explanatory of the title he is claiming; they are part of the *res gestæ* of his possession." The following cases may be referred to as illustrating the rule, and the extent and variety of its application. They do not all relate to declarations explanatory of possession. But those that do are no more than an application to the act of possession, which is continuous in its nature, of the general rule, that statements accompanying any act explanatory of its character are admissible in con-

nection with the act itself, *Doe ex dem. Davis v. Campbell*, 1 Ired. 482; *Oelrichs et al. v. Ford*, 21 Md. 489; *Boyden v. Moore*, 11 Pick. 362; *Printup v. Mitchell*, 17 Ga. 558; *Upson v. Raiford*, 29 Ala. 188; *State v. Emory*, 6 Jones' Law, 133; *Simonds v. Clapp*, 16 N. H. 222; *Spence v. Smith*, 18 N. H. 587; *Blake v. Graves*, 18 Iowa, 312; *Ross v. Hayne*, 3 G. Greene, 211; *Hardisty v. Glenn*, 32 Ill. 62; *Hodgdon v. Shannon*, 44 N. H. 572; *Commonwealth v. O'Conner*, 11 Gray, 94; *Perkins, Admr., v. Blood*, 36 Vt. 273, 282; *Kelly v. Kelly*, 20 Wis. 443; *Webb v. Richardson*, 42 Vt. 465; *Turpin v. Brannon*, 3 McCord, 261; *Martin v. Simpson*, 4 id. 262; *Babb v. Clemson*, 10 S. & R. 419; *West v. Price's Heirs*, 2 J. J. Marsh. 380; *Thompson v. Stewart*, 5 Littell, 5; *Bower v. Earl*, 18 Mich. 367; *Meade v. Black*, 22 Wis. 241; *Hollister's Admr. v. Young*, 42 Vt. 403.

The rule admitting statements of persons in possession in disparagement of their title, against those subsequently claiming under them, rests upon its own peculiar grounds; and it is not at all in conflict with the conclusion above stated. Many of the cases referred to in the opinion of the chief justice fully recognize the correctness of that conclusion. And if there are any in conflict with it, I do not think they are supported either by reason or the weight of authority.

With this view of the law, I do not think the defendant was entitled to the instruction which has already been quoted. He asked the court to say that his assertions of ownership were "no evidence of title." It is true they were not direct evidence. His statements that he had bought the cattle, were not evidence of that fact. But it was in its nature explanatory of his possession, and of the title which he claimed. It was equivalent to a direct assertion of ownership. And such assertion the law allows to be given in evidence, accompanied with evidence of possession. And to both it gives the effect of *prima*

*facie* evidence of title. I think, therefore, the court was not bound to say that the plaintiff's assertions of ownership were no evidence of title. They were evidence to prove the fact of such assertion, which fact, in connection with another, warranted an inference of title. They had, therefore, an ultimate bearing upon that question, and were proper to be considered by the jury to prove the fact of a claim of title. Had the court given this instruction, the jury would naturally have inferred that they were not to consider them for any purpose, and would have been misled. But if the defendant's counsel had asked an instruction properly defining and limiting the effect of such a claim of title, the court would undoubtedly have given it.

The same general rule above considered, also sustains the ruling of the court admitting evidence that Speck and Schuman, in negotiating the purchase, professed to act as agents of the defendant. Such statements by them were not proof of the fact of agency. It would be necessary to prove that fact in some other way, or to connect the defendant with the consummation of the bargain. But it is still true that whatever bargain was made, if any, was negotiated by those parties. What that bargain was, with whom and by whom it was made, could only be proved by showing what was done and said in its actual negotiation. If they professed to act for the defendant, that fact entered into and formed a part of the negotiation itself, and gave it character. It was a part of the *res gestæ*, and was admissible as such, though without something further it would have no binding effect upon the defendant. But his subsequent action in paying part of the money, and drawing a bill of sale in which he purported to be the purchaser, was sufficient evidence upon which to submit the question of agency to the jury, and to justify their verdict.

I do not think there was any error in the rulings of

the court, and the facts were for the jury.    The judgment should be affirmed.

COLE, J.    I am disposed to agree with Mr. Justice PAINE, that there was no error in refusing to give the second instruction asked by the defendant below. That instruction was liable to mislead the jury. · It was equivalent to telling the jury that they must wholly disregard the statements made by the plaintiff as to his ownership of the oxen.    There was evidence strongly tending to prove that the plaintiff bought the oxen, and that they were in his possession when the statements were made.    It seems to me that they were admissible as a part of the *res gestæ*, and for the purpose of explaining his possession.

DIXON, C. J.    This is a peculiar case, and the facts considerably confused.    The grounds of defense are two-fold; first, that the defendant did not purchase the oxen; and second, that if he did, he purchased them of Henry Roebke, the plaintiff's father, who was the owner. Very considerable evidence was given in support of both defenses, but it is only of the latter that I have to speak.    It is conceded that the latter, if established, would constitute a good defense to the action, as it no doubt would.    If Henry Roebke owned the oxen and sold them to the defendant, then the plaintiff, who is a stranger, has no right to sue for the price.    He does not claim by virtue of any assignment or transfer of the demand from his father to himself.    The case stands, therefore, leaving out all question of the alleged agency of the father in the sale, which was unknown to the defendant, as if Henry Roebke had sold the oxen to the defendant as his own and had received full payment for them, and the plaintiff, claiming to have been the owner, had brought replevin or trover to recover the oxen or their value.    Or it stands as if the defendant, being a judgment creditor

of Henry Roebke, had seized and sold the oxen on execution as the property of his debtor, and the plaintiff, claiming to have owned them, had brought trespass or trover to recover damages for their value. There was proof of a direct and positive kind, tending very strongly to show that Henry Roebke owned the oxen. The witness Elmer, from whom the plaintiff claimed to have purchased the oxen, testified that Henry Roebke paid for them. He said that both father and son came for the oxen and bargained for them, and that he sold to both of them so far as he knew. Henry Roebke, who was a witness, did not deny that he paid for them with his own money, or that he took out his pocket-book and gave it to his son to pay for them, as testified by Elmer. The oxen were taken to Henry Roebke's farm, and worked upon it, and remained in his possession. The farm of the plaintiff was four miles from his father's. Henry Roebke had the oxen at his farm and in his possession at the time of the sale. He sold them as his own, took them to the city of Oshkosh, and there delivered them to the defendant in pursuance of such sale, and executed the bill of sale and receipt in his own name as the seller, which bill of sale and receipt were put in evidence by the plaintiff. Some other facts and circumstances were also shown, but these, it must be conceded, are pretty strong proofs tending to show that Henry Roebke owned the oxen and made the sale. On the other side, the plaintiff testified that he bought the cattle himself and paid for them with his own money; that he owned them and worked them on his own farm part of the time, and that sometimes they were worked on his father's farm, but whether by himself or others does not appear. In addition to this, he was allowed to show by a boarder in his father's family and by his mother and sister, his control and ownership of the cattle, by giving in evidence his declarations made to those witnesses, at various times,

that he owned the cattle, that he bought them, and that they were his, etc. This evidence was objected to by the defendant, and the objections overruled. The defendant likewise requested the court to instruct the jury, that "mere statements made by the plaintiff to his father, mother, sister or neighbors, as to the ownership of those cattle, in the absence of the defendant, is no evidence of title in this case." The instruction was refused, and exceptions duly taken to all the rulings of the court.

It is of this evidence and these exceptions that I propose to speak. I think the evidence was wholly inadmissible, and that the instruction asked should have been given. It is something new to me in the law of evidence, if a party can thus make title to property in himself, by first declaring to third persons that he owns it, and then bringing such third persons into court to testify to his declarations. It is claimed that the evidence was admissible as part of the *res gestæ*, because the plaintiff had or claimed to have possession of the oxen at the time the declarations were made. I understand very well that declarations accompanying an act, otherwise equivocal, which serve to give character to it, are frequently admitted for that purpose, or as part of the *res gestæ* as it is called. Declarations accompanying the act of taking possession of property, showing the intent or purpose of such taking, when that becomes material, may be admitted. "The intention guides the entry and fixes its character." 3 Washburn on Real Property, 3d ed. 126. "As the possession derives its character from the intent with which it was taken and held, it is competent to show, by the declarations of the occupant made during the occupancy, that he did not hold adversely," Idem, 127; *Wallace v. Wilcox*, 27 Texas, 60. And so declarations made at the time of abandoning the possession of property or turning it over to another, may in like manner be received.

Roebke vs. Andrews.

But what there is in the mere possession of property, the fact of holding or controlling it for the time being, to constitute an act, transaction, or thing done, or *res gestæ*, so as to let in everything the party may say about the property in his own favor as proof of his title or right of possession, is certainly more than I can see. If I lend another my horse for a month or three months, and he takes and keeps him, and in the meantime he tells his family and neighbors and acquaintances that the horse is his, that he has bought, paid for and owns him, or that I have given him the horse, and if, at the end of the time he refuses to surrender the horse, and I bring suit, as I am compelled to, all those declarations become evidence of title in his favor against me, and the jury may find that the horse is not mine after all, but is his. He and I, being the only witnesses to the transaction, may testify, I to a lending and he to a purchase; or the number of witnesses may be otherwise equally divided; and he brings in the declarations to turn the scale in his favor. He being in possession of the horse, his declarations that he bought and owned him, are admitted; but I, not being in possession, my declarations to the contrary, and that I only lent the horse, though never so frequently made, are excluded. The advantage which he has over me is very manifest, and the great injustice of such advantage equally so. Acting on the strength of his declarations so admitted, the jury find a verdict in his favor. And such would or might be the legitimate result of letting in the declarations. If they are admissible, competent to go to the jury as evidence, then it is competent for the jury to act upon them and to find a verdict accordingly. If the declarations are clear, strong and positive and repeatedly made, and the witnesses by whom they are proved, honest and credible, the jury will be very likely to act upon and be governed by them. And why should they not? The declarations, if admitted, are received for that

very purpose. If they were competent in this case, then they would be competent in any other action between these same parties where the question of title or right of property in the oxen came up. If the defendant had bought the oxen and paid the full price to Henry Roebke, as he did in fact pay a part, and the plaintiff had brought replevin, claiming to be the owner and denying the agency of his father, as he might have done, the declarations would have been admissible in that action also. This is a very strange proposition, a new way of enabling a party to make evidence for himself, and I have been induced to look into the books pretty thoroughly to ascertain if it be possible that the doctrine of *res gestæ* can be stretched so as to include declarations of the kind; and I am satisfied that it cannot. As remarked by the supreme court of Massachusetts, in a similar case, I say: "The doctrine of *res gestæ* has been a convenient shelter for many legal anomalies, but is hardly broad enough to cover this." *Coit v. Howd,* 1 Gray, 551. The point decided in that case was, that the declarations of the vendor of a chattel (who was still living and a competent witness), made before the sale, and without the knowledge of the purchaser, that he had previously sold the chattel to another, were inadmissible, although made to one in whose keeping the chattel was, and accompanied by a request to keep it for such other person.

And I find the point to have been directly ruled in the following cases, in which it was held that such declarations were inadmissible in favor of the party making them: *Warring v. Warren,* 1 Johns. 340; *Swindell v. Warden,* 7 Jones' Law R. 575; *Turner v. Belden,* 9 Mo. 787. The point stated in the first case is, that the declarations of a tenant, or party in possession, are never received in evidence in support of his title; *aliter*, if against the interest of the person making such declarations. In the second case the decision

was, that the possession of property is not a fact that entitles the party holding it to give his own declarations in evidence, either to establish his title, or to contradict the witnesses on the other side. And in the third, the question decided was, that the declarations of a person in possession of property are not admissible as evidence in his favor, or in favor of those claiming under him, to show title in him. And in that case the judgment was reversed because of the admission of such testimony, and because the court refused to give such an instruction as was asked here.

And in *Hollister v. Young*, 42 Vt. 403, the same instruction was given, and held to have been rightly given. In that case the *decision* or adjudication given in evidence by the defendant was no proof of title in his favor. The court so instructed the jury. It was only evidence to show that he was claiming the land in dispute at the time, and this became material for the purpose of showing the nature of his possession, and that it was adverse, in order that the statute of limitations might be applied. If, instead of the *decision* of a court, it had been a *declaration* made by the defendant and given in evidence for the same purpose, it is obvious that such *declaration* could have had no greater effect. If anything, the decision of a court of competent jurisdiction in the defendant's favor was much stronger evidence in support of his title than his mere verbal declaration could have been; and yet the court held that the decision " was *no evidence* in favor of the defendant's title."

And again, in *Murray v. Cone, infra*, a like instruction was asked and refused, and the judgment for that reason reversed. It was a case very much like the present, except that the declarations, also held to have been inadmissible, were there shown to have been made when the plaintiff was in possession of the cattle in controversy and exercising acts of ownership over them, whilst here they were not so shown.

And much like the present also was the case of *Holmes v. Sawtelle*, 53 Maine, 179, where, in an action of replevin for a colt, brought by an executor, it was held that the plaintiff would not be permitted to prove the declarations of his testator, made while the colt remained on his premises with his other stock, tending to show that he claimed to own the colt, to rebut testimony offered by the defendant, tending to show a previous gift by the testator to his son, who lived with him, and of whom the defendant had purchased the colt. The decision is directly in point, and fully sustains my views in this case.

And the following numerous cases will all be found directly to sustain the same propositions, and that it is *only* declarations by the party in possession *against his interest* which can be received or considered *upon the question of title*. *Morrill v. Titcomb*, 8 Allen, 100; *McGough v. Wellington*, 4 Allen, 502; *Osgood v. Coates*, 1 Allen, 77; *Blake v. Everett*, id. 248; *Smith v. Martin*, 17 Conn. 399; *Ware v. Brookhouse*, 7 Gray, 454; *Norton v. Pettibone*, 7 Conn. 319; *Carrier v. Gale*, 14 Gray, 504; *Applegate v. McClurg's Heirs*, 3 Marshall, 304; *Whitfield v. Whitfield*, 40 Miss. 553; *Jackson v. Bard*, 4 Johns. 230; *Gibney v. Marchay*, 34 N. Y. 301; *Jackson v. Miller*, 6 Cow. 751; *Peaceable v. Watson*, 4 Taunt. 16; *Criddle v. Criddle*, 21 Mo. 522; *Doe ex dem. Human v. Pettett*, 5 Barn. & Ald. 223 [7 E. C. L. 75]; *Doe ex dem. Stansbury v. Arkwright*, 5 Carr. & Payne, 575 [24 E. C. L. 462]; *Abeel v. Van Gelder*, 36 N. Y. 513; *Jackson v. Vredenburgh*, 1 John. 159; *Jackson v. McCall*, 10 Johns. 377; *Vrooman v. King*, 36 N. Y. 477; *Chase v. Ewing*, 51 Barb. 597; *Newell v. Horn*, 47 N. H. 381; *Smith v. Powers*, 15 N. H. 547; *Shepherd v. Thompson*, 4 N. H. 213; *Watson v. Bissell*, 27 Mo. 220; *Kyle's Admr. v. Kyle*, 15 Ohio St. 15; *Shackleford v. Smith*, 5 Dana, 240; *Austin v. Thompson*, 45 N. H. 118, 119; *Wendell v. Abbott*, 45 N. H. 353, 354; *Hoysett v. Ellis*, 17 Mich. 371, 372; *Murray v. Cone*, 26 Iowa, 276; *McPeake v. Hutchinson*, 5

S. & R. 295; *Ellis v. Howard*, 17 Vt. 330; *Pitts v. Wilder*, 1 N. Y. 525; *Regina v. Birmingham*, 101 E. C. L. 767, 769; *Brubaker v. Poage*, 1 Monroe, 125, 126; *Hedrick v. Gobble*, 63 North Carolina, 48; *Devries v. Phillips*, id. 207; *Weidman v. Kohr*, 4 S. &. R. 174; *Whiteford v. Burckmyer*, 1 Gill, 127.

And of the above cases, *Morrill v. Titcomb* and *Criddle v. Criddle* are exactly to the point now under consideration. In the former it was held, that mere declarations of one in possession of land, in favor of his own title, are inadmissible. And it makes no difference with respect to the admissibility of the declarations, whether the property in the possession of the party is real or personal. The decisions are, that it is immaterial. In the latter case it was decided, that the declarations of a party in possession of personal property, against his title, are admissible; but declarations by him on other occasions, in support of his title, are not admissible, even in rebuttal.

And precisely to the same effect are *Watson v. Bissell* and *Kyle's Admr. v. Kyle*. In the last, which was a suit against the administrator in which the question in issue was whether the intestate held possession of personal property as the bailee or vendee of the plaintiff, it was held that the declaration of the intestate that he was the owner, was not admissible in evidence in favor of the administrator, although such declaration was made while the intestate was in possession of the property, and was accompanied by the act of offering to sell the same.

The cases in 1 Allen, 77 and 248; 17 Conn. 399; 399; 47 N. H. 381; 34 N. Y. 301, and many others, are to the effect that declarations of one in possession of land, in disparagement of his own title, are admissible in evidence against him and those claiming under him; but that declarations in favor of his own title are inadmissible.

Of the others, several are cases where the declara-

tions of the ancestor, or other former apparent owner or party in possession of property, have been sought to be given in evidence in favor of those claiming under him, and the declarations have been rejected. Of course, if the declarations of the ancestor or persons formally in possession of the property, claiming to have been the owner, made while he was in possession, ought not to be received in support of the title held under him, the declarations of the party to the action or person presently possessed and claiming to own, ought not to be, and especially where such party or person is a competent witness.

And all the authorities seem to me to result in fully sustaining the propositions laid down in *Criddle v. Criddle*, as follows : " Where a person is in possession of property, whether real or personal, and nothing more appears, the law presumes that he is the owner of it. He cannot, whilst thus possessed, make title for himself by his own declarations or assertions. But his declarations against the presumption which the law makes in his favor, may be given in evidence to disprove the presumption, and to show that he has a less or no interest in the property of which he is possessed. This we understand to be the rule on the subject of declarations made by one apparently the owner of property, and so it has been repeatedly declared by this court. Now this rule would be of little or no value, and, indeed, would be dangerous, if, when declarations against a party's interest are offered in evidence, it should be allowed him to bring in declarations made on other occasions making title in himself, on the pretense of disproving those against his interest."

And this I conceive to be the sound and true rule of law upon the subject, with all the authorities in support of it and none against it. In saying this, I do not, of course, mean to say that there may not be circumstances under which the declarations of the party in possession should be received, but not in a case like

this.   The authorities show that there are such cir-
cumstances, which, so far as they constitute an excep-
tion or apparent exception to the rule, are as well
defined as the rule itself.   But these are cases resting
upon distinct grounds, and which do not in reality con-
stitute an exception.   Such are cases where the nature
of the possession becomes a material point of inquiry,
and the declarations are admitted in explanation of it.
If the nature of the possession be equivocal or in
doubt by the proof, and it be material that its true
character be shown, as that it was under a claim of
title by the party holding it, the declarations have
sometimes been received to explain it and to show
that it was held under such claim, but *only* for that
purpose and *not as any evidence of title.*   The courts
have always been very careful so to limit them.   Such
was the case, 42nd Vt. 403, above referred to, where it
became important to show, what otherwise did not
clearly appear, that the possession was *adverse* ; and
as that could be shown only by proving that the party
held under a claim of title or right in himself which
alone made his possession adverse, the suit or decis-
ion in question was competent evidence of such claim,
but of nothing more.   It simply proved that he made
the claim and held possession in pursuance of it at
the time, but established nothing beyond that.

But the present is not a case of that kind, and not
one falling within any of the exceptions.   The nature
of the plaintiff's possession, provided it ·had been
shown that he was in possession when the declarations
were made, was wholly immaterial.   There was no
question under the statute of limitations, and no legal
right or proposition of law dependent upon it.   The
sole question in issue was the question of title, and that '
was a direct one, wholly disconnected with any collat-
eral fact or circumstance growing out of the nature of
the plaintiff's possession, or what he may have said or
claimed with respect to it.   In such a case the posses-

sion, or *prima facie* evidence of title afforded by possession, is a circumstance of no weight. It signifies nothing at all as against the direct evidence of title by which the rights of the parties must be tested. The declarations were not, therefore, brought in as evidence explanatory of the possession, or of the title by which the plaintiff claimed, but rather as independent evidence of title, and to supply the place of that arising by presumption of law from the fact of possession. The possession of the plaintiff was by no means satisfactorily established. The inference from all the testimony was quite strongly against it, and that Henry Roebke had the possession and right of possession and control of the oxen. This defect in the evidence was undoubtedly felt, and it was to help it out that the declarations were introduced. *It was not proved that the plaintiff was in possession of the oxen at the time the declarations or any of them were made.* This alone, within all the authorities, would exclude them, even though by possibility they might otherwise have been admitted. The declarations came in, therefore, as direct evidence, or some evidence bearing directly upon the question of title, for which purpose they were entirely inadmissible. But if the case had been different, and the declarations properly received to explain the possession, or to show that the plaintiff claimed title, still the defendant was entitled to the instruction asked. The refusal to give the instruction fixes the purpose for which the declarations were received, and that it was as direct evidence of title. The court, the counsel and the jury so understood them, and it is obvious that they must have had very considerable, if not a controlling, influence upon the minds of the jury.

In 1 Gill, *supra*, 140, the familiar rule of law is thus stated by the court: " It is an unbending rule of evidence, subject to very few and well defined exceptions, that a party cannot offer in evidence his own declarations in relation to the subject in controversy."

Some of these exceptions have been already noted, and the only others, strictly speaking, which now occur to me, are where the declarations constitute part of the *res gestæ*, or where they are made to the opposite party or in his presence and hearing, and are not denied, or are assented to, by him. Other cases in which declarations, or hearsay, or general reputation, are received, are pointed out in 7 Gray, 455, and in *Ellicot v. Pearl*, 10 Pet. 434–8; in *Boardman v The Lessees of Reed*, 6 id. 341, and in *Stroud v. Springfield*, 28 Texas, 665–7. They are in general cases of boundary, reputation, pedigree, marriage, custom and prescription. And to these may be added a class of cases, where the declarations made by a vendor remaining in the possession of property, after the period when in the ordinary course of trade it should have passed to the possession of the vendee, are admissible as evidence against the vendee on the question of fraud. Cases of this class rest also upon peculiar grounds. In some of the authorities it is said to be on the ground of conspiracy or combination to defraud. *Blake v. Graves*, 18 Iowa, 314. In others it is said to be a cardinal principle that in cases of fraud and simulation, great latitude in the introduction of evidence is allowed. *Cannon v. White*, 16 La. An. R. 88; *McNorton v. Akers*, 24 Iowa, 369, and cases cited. But the declarations here given in evidence were clearly not within eny exception, and ought to have been excluded.

Neither do I think it makas any difference that the declarations were called out on cross-examination by the defendant. The witnesses were called by the plaintiff to prove the fact of ownership by him, and the defendant had the right to test their knowledge and means of information by cross-examination. He had the right to ask them how they knew the plaintiff owned the oxen, and when they answered that they knew it because the plaintiff had told them so, or that

he bought them, it was, without giving the instruction asked, precisely equivalent to allowing the plaintiff to give the declarations in evidence upon the examination in chief. The defendant was, therefore, entitled to have the instruction given, and for that error I think the judgment should be reversed.

I am aware that there are some cases in Alabama, and one in Arkansas, in which it might, at first sight, possibly seem that the courts had failed to discriminate with accuracy as to the purposes for which the declarations of a party in possession of property may be received; but further examination will show this is clearly not so. Those decisions are in strict harmony with the adjudications elsewhere, holding only, where the character of the possession, or the title claimed, becomes material, that declarations explanatory thereof may be admitted. *Yarbrough v. Arnold*, 20 Ark. 592; *Thompson v. Mowhinney & Smith*, 17 Ala. 362; *Mims v. Sturdevant*, 23 id. 664. The two last, as also *Darrett v. Donnelly*, 38 Mo. 492, directly sustain the conclusion at which I have arrived, especially as to the inadmissibility of the plaintiff's declarations that he bought the oxen. And see also *Frolick v. Presley*, 29 Ala. 462; *Gillespie v. Burlison*, 28 Ala. 563; *Arthur v. Gayle*, 38 Ala. 259, 267; *Gordon v. Clapp*, id. 357, and *Bragg v. Massie*, id. 89, which clearly show that the court of that state does not differ from other courts on the general question.

My opinion, therefore, is, that the entire weight of authority and of reason too, is against the admissibility of the declarations and opposed to the ruling of the court in refusing to give the instruction. The judgment should for these reasons be reversed.

Of the other questions presented, I need not speak, except to say that I think the third instruction asked by the defendant was properly refused, because it does not appear from the case or bill of exceptions that the list given by the plaintiff to the assessor was sworn to

by the plaintiff. As to the question of the admissibility of the statements made by Speck and Schuman before their agency or right to act for the defendant was shown, I have more doubt. But of this I am not required to express an opinion, and do not. I hold that the judgment should be reversed on the grounds above stated.

The foregoing opinion was prepared before that of the majority of the court, written by Mr. Justice PAINE, as will be seen by reference to his opinion. A few words will suffice to explain how this was. When the cause was reached in consultation, my brethren, and especially Mr. Justice PAINE, were of opinion that the declarations were admissible, and that the instruction ought not to have been given. I was in doubt. No authorities were examined on the question, or at most but one or two in this court cited by counsel for the defendant. The cause was decided, and assigned to me to examine and prepare an opinion. The result of my examination appears from the opinion. Mr. Justice PAINE afterwards prepared his opinion, in which Justice COLE subsequently concurred. Such is a brief history of the cause after it was submitted to this court. I prepared the opinion in this, therefore, as I have sometimes done in other cases, believing that more mature investigation would satisfy my brethren, as it had myself, of the correctness of the views which I had taken. In this, however, it seems I was mistaken, and though I cannot but express my surprise, I still do not complain. It is the right of my learned associates, and their duty, to correct me when in the wrong, as I doubtless too often am, even with my best endeavors to arrive at correct conclusions. The law is not one of the exact sciences. Its rules and principles are incapable of positive demonstration, and, as to many of them, there is always room for much

difference of opinion. We can, as it were, only approximate to the truth, coming as nearly to it as possible, but are never certain that we have precisely reached it. In this process of searching for legal truth and applying it to the practical affairs of life so as to secure justice and right among men, which is the business of this and all other courts, it is matter of course that nothing is to be yielded in mere compliment to the views of one another. My brethren can yield nothing in mere compliment to my views, nor I to theirs. We can only give an assent as we find the truth to be, after the most careful and dispassionate examination, due regard being had to the opinions of others which have taken the form of what is known as legal authority. I would cheerfully accede to the views of my brethren, if I could see the truth as they do, but I cannot. I have carefully examined their opinions and the authorities to which they refer, and am more than ever convinced that they are wrong and I am right; and as I have had no opportunity of expressing my views with regard to their conclusion and the authorities cited, I avail myself of the privilege which a dissenting judge always has, of doing so after the majority opinion is delivered. In view of the multitude of cases to which the decision is applicable, and the magnitude of the interests which may sometimes depend upon it, I cannot but think the question one of very great practical importance. It is a question which, though it may not often heretofore have arisen in our courts, must, I think, owing to the conclusion arrived at by my brethren, so opposed to what has generally been esteemed to be the law, very frequently come up hereafter, until it is finally and definitely settled. The proposition affirmed by my brethren, as I understand from the opinion of Mr. Justice PAINE, is nothing less than this: That the declarations of a party in possession of property, respecting his title thereto or the title claimed by him,

are part of the *res gestæ*, and as such *always* admissible in evidence in his favor to show what his claim of title was, in *every* action involving such title ; and that, when admitted, such declarations are *evidence* in connection with the fact of possession *competent* to be considered by the jury upon the immediate question of such title, and from which they may find that it really existed. I think this a very important proposition, and one which demands a thorough investigation, and I make no apology for extending the discussion, though it is certainly not my intention or wish to carry it to the point of weariness. If I shall succeed in illustrating the truth—in showing in what cases the declarations of a party in possession of property are to be received in evidence in his favor, and in what not, the purposes for which they are received, and the weight or influence which they are to have—it is all that I desire. I shall endeavor to show that my brethren have fallen into confusion, and that their position is an entirely incorrect one with respect to the nature of this case and of those cases in which the declarations are admissible, and with respect to the purposes for which they are admitted, and that the authorities, as to which there is no manner of conflict or inconsistency, have been entirely misapprehended. I shall show, or endeavor to, that there is a distinction running through all the cases, which a careful examination cannot fail to reveal and make plain, but which my brethren seem to have wholly overlooked.

And first, as to the mistake in their position respecting the nature of the case, which is the starting point in the matter, and from which proceeds also the error in the understanding and application of the authorities. It seems to be supposed that this was a case where the nature of the possession or the title claimed by the party as explanatory of the possession, was a material point of inquiry. Mr. Justice

PAINE in his opinion says: "The immediate point of inquiry is, what title was claimed, and not what really existed." And his reasoning throughout, though it extends much farther, is the same as that found in that class of cases where the declarations are admitted to show the *character* of the possession. I had supposed enough was said in the foregoing opinion to indicate the distinction between cases of that kind and the present, which to my mind was very apparent and clear; but it seems there was not. If I did not succeed then in enforcing the distinction or making it intelligible, it may seem hopeless for me to attempt to do so now. I certainly can add very little to what is there said. But as there is no allusion to it in the opinions of my brethren, nor comment made, and as I have found some additional authorities, and the industry and research of my brother PAINE have furnished me with others, which, as I think, serve to make it still more clear, I venture to refer to it again. In cases of that kind, where the character of the possession becomes material, it is true, as Mr. Justice PAINE says, that "the immediate point of inquiry is, what title was claimed, and not what really existed." But the very point of difficulty here is, that this is not a case of the kind at all; and thus mistaking the nature of the case, the mistake in applying the authorities follows as of course. The distinction is entirely lost sight of. But the case here was the very reverse. The primary and immediate point of inquiry here was, what title really existed, and not what was claimed. The proofs went to the very source of title, namely, the fact of acquiring it by purchase, and whether it was so acquired. The character of the plaintiff's possession, conceding that he had it (and it makes no difference that it may have been in him continuously from the date of purchase to the day of sale), and the title claimed by him, were matters neither directly nor indirectly involved in the issue. There was no

question as to whether his possession was adverse or not, or whether it was under a claim of title so as to make it adverse, and no question as to whether the action was barred, or whether he had acquired title by virtue of such possession, under the statute of limitations or otherwise. And there was no question of intention on his part in holding the possession, which made his declarations admissible to show such intention. But even if there had existed any of these or similar reasons for admitting the declarations, still the instruction asked should have been given. The case 42 Vt. 403, and all others in which the question has been considered, clearly show this. And the rule itself, or the terms in which we find it laid down in all the books, distinctly suggest the same limitation. The delarations of the party in possession, *explanatory of the possession,* or *explanatory of the title he is claiming,* are admissible. They are admitted *to explain the possession* when it is material that its character should be known, or to show the title *claimed* when that becomes material, but are *no evidence of the title.* They are proof only that such was the character of the possession or such the title claimed; but, either by themselves considered, or when taken in connection with other facts and circumstances, have no effect whatever as *direct* evidence of title. The inquiry in such cases being as to the character of the possession, and whether it was adverse or not, the jury are limited to that. And if they find it was adverse and held a sufficient length of time, the title of the party follows as an inference or conclusion of law from the facts so found. And this principle or rule respecting the admissibility of such declarations, the purposes for which they are admitted, and their effect as evidence, is likewise well illustrated by the following cases, the last six of which are cited by Mr. Justice PAINE. *Sheaffer v. Eakman,* 56 Pa. St. 144; *Outcalt v. Ludlow,* 32 N. J, Law R. (3 Vroom), 239; *Leport v. Todd,* id.

128, 129; *McMasters v. Bell,* 2 Penn. 180; *Sailor v. Hertzogg,* 2 Pa. St. 184, 185; *Criswell v. Altemus,* 7 Watts, 565; *Hodgdon v. Shannon,* 44 N. H. 572; *West v. Price's Heirs,* 2 J. J. Marshall, 380; *Turpin v. Brannon,* 3 McCord, 261; *Webb v. Richardson,* 42 Vt. 465; *Duffey v. The Presbyterian Congregation,* 48 Pa. St. 51; *Ricard v. Williams,* 7 Wheat. 59. An examination of these cases will show that it is *only* where the character of the possession, or the nature of the claim made by the party, becomes material with a view to the determination of some ulterior question, that the declarations are admitted. Cases of the kind, as already intimated, are generally those arising under the statute of limitations, where the object is to show that the possession was adverse; and such are most of the cases above cited. Such was the principal case of *Ricard v. Williams,* relied upon by Justice PAINE, and from which he quotes from the opinion by Mr. Justice STORY. The question there was upon the nature of the possession of two successive occupants of the land, and whether it was under a claim of title in fee and adverse, so as to entitle the occupants and those holding under them to the benefit and protection of the statute of limitations, and to bar the entry of the adverse claimant. The facts of the case were peculiar and complicated, and so were the questions of law. The remarks of the court were no doubt correct, but they should be construed with reference to the particular case. As to one of the occupants the fact was, that he was in possession of the land, *not claiming an estate in fee, but only a life estate,* as shown by his declarations. And the effort was to sustain his possession as adverse, and the basis of a title in fee; and the presumption of law that possession is *prima facie* evidence of title was invoked in his behalf, notwithstanding it appeared that he did not claim such title. (See argument of Mr. Pinkney at page 85, and following.) It was in answer to this position that the court made use of the

language quoted, and said, that " it is not possession alone, but possession accompanied with a claim of the fee, that gives the effect of *prima facie* evidence of ownership and seizin of the inheritance, by construction of law, to the acts of the party." The appropriateness of this language will not be questioned. And immediately after the words quoted by Justice PAINE, occur the following : " If he claims only an estate for life, and that is consistent with his possession, the law will not, *upon the mere fact of possession*, adjudge him to be in under a higher right, or a larger estate." It is manifest, therefore, that the court did not deny nor intend to deny or draw in question, the correctness of the proposition universally acknowledged, and which was freely conceded by the very eminent counsel who argued that case, that possession of property, unqualified and unexplained by other circumstances, is *prima facie* or presumptive evidence of ownership. The court affirmed, and only intended to affirm, what was so happily expressed by Mr. Webster in reply to Mr. Pinkney, that " legal presumption is resorted to where there is no particular proof, and because there can be no particular proof." The close of the opinion shows that the court applied the statute of limitations in favor of the title derived under the other occupant, whose possession and *prima facie* evidence of title were not rebutted by any like declarations or admissions.

And the case of *Hodgdon v. Shannon* very aptly illustrates the rule and the distinction. The character of the possession was there involved, and was equivocal. One tenant in common and owner of an equal share of an estate in land, was at the same time mortgagee of the other equal share, and the question was as to the foreclosure of the mortgage by possession held and claim of title made under the mortgage, *adverse* to the mortgagor and other tenant in common, for the period of the time prescribed by the statute of limitations. The possession of the mortgagee, which was

exclusive, might have been referred either to her right as tenant in common or as mortgagee, both of which were equally lawful. Her declarations showing or tending to show that she was in possession asserting title to the *whole* premises, were, " admitted, to be weighed by the jury only upon their finding her in possession at the time," for the purpose of determining, as the court say, " the more material question, whether she was claiming under the deed (mortgage) in question, or otherwise."

I might proceed further in the examination of cases of the kind under the statutes of limitation, but it is needless. From one, all may be learned. The distinction is as clearly shown by one or two as by all. I will, nevertheless, refer to the case of *Duffey v. The Presbyterian Congregation*, because it exhibits a somewhat different and peculiar ground for admitting the declarations. There the party in possession of certain real estate claimed, or might have claimed, title by virtue either of two wills, one of her father and the other of her mother. It was for the interest of the plaintiffs in the action, *The Presbyterian Congregation*, to show that she claimed the land through her mother, and for that purpose they gave in evidence her declarations while in possession, that she did so claim. The defendants derived title under her, and it was against their interest that she had so claimed, because it subjected the estate to the payment of a legacy to the plaintiffs, contained in the will of the mother. It will be seen, therefore, that the declarations were admissible upon either of two grounds; first, because the character of the possession and title claimed were in doubt, and required explanation for the purposes of the action, which was to recover the legacy ; and, second, because they were declarations *against the interest* of the party making them. If the devisee under the wills, who made the declarations, and under whom the defendants claimed,

had been alive and the defendant in the action, the declarations might have been given in evidence against her, and of course were admissible against the defendants who succeeded to her estate.

My learned associate quotes from this case also, to justify his position that the declarations of a party in possession of property are part of the *res gestæ*, and as such in all cases admissible to show what title the party claimed. I said, in my opinion, that I thought the doctrine of *res gestæ* could not apply to let in the declarations in a case like the present, and it may be implied that I did not consider them as part of the *res gestæ* in those cases in which they are admissible. The controversy here is not upon legal terms, or what the declarations shall be called when properly admitted, but as to when and under what circumstances they are really and truly admissible. I care not by what name they are called or under what title or rule of evidence they are received, if only they are properly received. In *Sailor v. Hertzogg*, Chief Justice GIBSON says the declarations are admitted to show the *intention* of the party in possession, because it is that which fixes the character of the possession, and he asks: "But how can his intention be made to appear by anything else than his declarations, which have always been received as evidence of the *nature* of an occupant's possession?" And to the the same effect see, also, *Webb v. Richardson*, 42 Vt. 472–474; *Young v. Power*, 41 Miss. 197, and *Baker v. Kelly*, idem. 696. This is no doubt a true statement of the ground upon which all such declarations are admitted, and being so, it is quite unnecessary for me to controvert the propriety of calling them part of the *res gestæ*, or of the act or fact of holding. They may, perhaps, be properly enough so called.

And the other object of the quotation fails, I think, when the language is properly understood. The case was one where the nature of the possession, or of the

title claimed by the party, became material, and the court obviously intended no more than to say that in cases of that kind the declarations explanatory of the title claimed are *always* admissible.    This limitation is clearly implied, so clearly that no expression of it was necessary.    The court obviously did not intend to assert any such doctrine as that supposed by my brethren.    But even when thus understood, the statement is still too broad, and I have no doubt that, in a proper case, the learned judge who wrote that opinion would be the first to qualify and correct it.    An examination of the authorities will show that it is *not always* that the declarations of a person in possession of land are received as explanatory of the title he is claiming. · On the contrary, there are many cases in which they will not be so received to give character to the possession.    Such were the cases in 8 Allen, 100, and 3 Vroom, 128, above cited.    The former was where the grantor, after conveyance of the premises, continued in possession for more than twenty years. The rule of law in such case, that the possession of the grantor is permissive and not adverse, is familiar. The declarations of the grantor, while in possession, that he owned the premises or claimed to own them, were offered to show that his possession was adverse, and were excluded.    The correctness of this decision is obvious.    The possession being shown to have been permissive or in subordination to the title of the grantee, it is clear that nothing short of a declaration or claim of adverse right made to the grantee himself, or those claiming under him, could operate to change its character.    And the same is true in all cases where the possession is shown to have been permissive; as of a tenant; or of a purchaser from the husband in whose conveyance the wife does not join, and as to whom the possession of the purchaser is not adverse during the life of the husband (*Kincaid v. Perkins,* 63 N. C. 282); and of many others.    In all such cases the general

statements or declarations of the party as to his adverse claim are wholly inadmissible. Speaking of tenancy in 3 Vroom, 129, the court say: "The true principle was forcibly stated by the court of appeals of South Carolina, in these words, viz.: 'That where a tenant claims to hold adversely, he must show when that intention was made known to his landlord.' *Whaley v. Whaley*, 1 Spear, 225." And see 3 Washburn on Real Property, 3d ed. 127, 128, and authorities there cited. And in general it may be said of declarations that they must be made before litigation and before any controversy arises, and must be free from taint or suspicion of improper or unjust motives. See opinions of the judges in the *Berkeley Peerage Case*, 4 Camp. 401, and *Baker v. Kelly*, 41 Miss. 696.

I have thus considered some of the authorities, and I presume those chiefly relied upon in opposition to my views. I think they fully exemplify the distinction between the cases, and at once account for the different principles of law applicable to them. It only remains briefly to consider the others cited by my learned associate, to see how far and in what way they bear upon the question. It is frankly stated in the opinion that they do not all relate to declarations explanatory of possession. Such was the case in 21 Md. 489, which seems quite foreign to the question. And the same also were those in 4 McCord, 262; 17 Ga. 558; 16 N. H. 222, and 11 Gray, 94, which were cases of declarations accompanying acts, and not distinguishable from ordinary cases of the kind in which the books abound.

Those in 29 Ala. 188; 18 Iowa, 312; 3 G. Greene (Iowa), 211, and 10 S. & R. 419, were all cases of *fraud*, where the declarations of the vendor in possession after sale were given in evidence to show the fraud.

In 6 Jones' Law R. 133, the declarations offered were rejected, and it was held, on appeal, properly rejected.

The declarations in 32 Ill. 62; 11 Pick. 362; 5 Littell, 5, and 36 Vt. 282, were declarations accompanying the acts of *taking* or *abandoning* the possession of property. In the latter case the declarations were held inadmissible "for any purpose except on the question of abandonment."

In 1 Iredell's Law R. 482, the declarations of the defendant, *disclaiming* the possession of twelve out of thirteen contiguous tracts of land, were admitted in evidence on his part to show such *disclaimer* in an action of ejectment against him for the thirteen tracts.

The question in 18 Mich. 367 was one of boundary, and the declarations are *in disparagement of title*. And so, too, in 18 N. H. 587, the declarations were by an occupant of land *against her interest*, and moreover the nature of her possession was material.

The decision in 2 J. J. Marshall, 380, is explicit to the point that the declarations of the plaintiff here, that he bought the oxen, were inadmissible. The judgment in that case was reversed because similar declarations by the party in possession were admitted.

The case in 42 Vt. 403, is one of those referred to in my opinion first above written, and from which Mr. Justice PAINE obtained the reference. It was a case under the statute of limitations, and requires no explanation beyond what is there given.

The two cases in this court are, 20 Wis. 443, and 22 Wis. 241. In the former it became necessary to ascertain the *intention* of the party in moving the building on to the land, and the declarations were admitted for that purpose. The principle of their admissibility is, therefore, very obvious, but how the *intention* of the plaintiff here, when in possession of the oxen, became material, is not so easily seen. In the other case *the sole question was as to the fact of possession of the land, or who had it at the time the action was brought.* To maintain the action it was necessary for the plaintiff to show that *he was in possession of it.* He claimed that he was, by

Odell, as his tenant. The answer of Odell, under oath, in the ejectment suit brought by the plaintiff against him, denying his tenancy, was a declaration of the most positive and unequivocal kind *made to the plaintiff*, that he, Odell, intended to hold and did hold the land adversely. It in effect terminated the tenancy, if one ever existed, of which the evidence was doubtful, and thenceforth the possession of Odell was adverse to the plaintiff. As between him and the plaintiff, the statute of limitations commenced to run from that time, and his possession being thus in open hostility to the plaintiff, the latter could maintain no action upon it. It was the possession of Odell, and not of the plaintiff.

Such I believe to be a fair and faithful summary of the authorities relied on; but if not, let them be examined to see how far it is otherwise. And since my learned associate speaks doubtingly of those to which I referred, and says, " if there are any" in conflict with his conclusion, he thinks they are not supported either by reason or the weight of authority, let them be examined also to see if his criticism be just. As to my own references, which are certainly numerous enough, I will simply add, that, so far as I am capable of judging, I did not make any not strictly in point upon one branch or the other of the proposition involved, either that the declarations of ownership, or of purchase, were inadmissible. And with respect to any supposed conflict in the authorities, I have endeavored to show that it does not exist. I think there is not the slightest. But if any thing further be required to establish this, it will appear by the references. It will appear by the fact that the decisions referred to are in many instances in the same state, and by the same court. I refer, for example, to the decision in 47 New Hampshire, 381, in support of my views. I think it directly and explicitly sustains them. My learned associate refers to

44 New Hampshire, 572, as a decision the other way. Both cases were decided in the same court and by a bench, with one exception, composed of the same judges, *and the opinions in both were written by the same learned judge.* And yet there is no reference in one of these cases to the other, nor to the class of cases to which the other belongs, or to the authorities cited in it, nor the slightest intimation of any conflict or inconsistency. And so it is of the other decisions in that state, and of those in Massachusetts, North Carolina and Kentucky, and wherever the questions have arisen. The courts see, or think they see, a broad distinction between the cases, and would, I believe, be as much surprised as I have been, to find those of one class quoted as opposed to or overruling those of another. They think they can see their way very clearly upon this important question, and so I think I can see mine, and I must pursue it, notwithstanding my brethren, for whom I entertain the highest respect, think differently. I think it will be found on examination, that their conclusions are not sustained by a single adjudged case, nor by any *dicta* even, and that directly opposed to them is the strong and unbroken current of authority to which I have referred.

As to the opinion intimated, that possession is not *prima facie* evidence of title, and that to become such, *a claim of title evidenced by the declarations of the party that the property is his,* must also be shown, enough, perhaps, has already been said. If this be so, then what is to become of the possession of the party who is so unfortunate as never to have made any such declarations? There are very many people in the world much given to silence on such matters, and who do not go about saying that this or that chattel in their possession belongs to them, or that they bought and own this or that property. They are not talkative and noisy, and not disposed to trouble others with affairs which concern only themselves. There are others

who, by natural infirmity, are incapable of making such declarations. It is something entirely new to me, if the possession of such persons is to be regarded as *less* evidence of title than the same kind of possession by the noisy, garrulous individual who can bring many witnesses to testify to his declarations.

But it may be said, after all, that the difference between myself and my brethren is more imaginary than real, inasmuch as they hold that the declarations were admissible only to show what title was claimed. If such was the result of their decision, then I freely admit that, though contrary to all the adjudications, it would still not be a matter of so much moment. But such is clearly not the result. After reasoning throughout to show that the declarations were admissible as evidence of the *claim* of title made, they conclude by holding that they were evidence of the *title itself*. Mr. Justice PAINE says: "It is true they were not direct evidence." I do not know as I comprehend what is intended by this kind of "not direct" evidence of title in cases like the present. If the case involved any collateral inquiry like that of an adverse possession for the period of time prescribed by the statute of limitations, it would not then be so difficult. But he says in substance, that the declarations were evidence in connection with the fact of possession which warranted an inference of title, or from which title might be found by the jury. His language upon this point is: "They were evidence to prove the fact of such assertion, *which fact*, in connection with another (namely, possession), warranted an inference of title." By this I understand the declarations were evidence in addition to or in further support of that afforded by the fact of possession. They gave greater strength and efficacy to the possession as evidence of title, and made it, so to speak, something more than *prima facie* evidence of title. *The assertions of the party to an action that he has title to the property in contro-*

*versy in it, warrant an inference of title in his favor.* That is the proposition. *They warrant such inference even against direct evidence to the contrary, and tending to show that he has no title, and are to be weighed by the jury against such evidence.* And so, I think, the jury must have understood the declarations from the refusal to give the instructions asked. In 7 Jones' Law R. 577, speaking of a party in possession of property, the court say: "If he claim in his own right, no declaration of his can rightfully be used to prove more than the presumption arising from possession, and if that be a party's position, it would seem that his declaration cannot be used for any legitimate object." The jury must have understood that, aside from the fact of possession, if they so found, and the effect to be given to it as evidence of title, the declarations were also to be considered on the same subject, and as of some effect, and, it seems to me, as direct evidence of title. Now it is in upholding the refusal to give the instruction that my brethren wholly depart, as I think, from the course of reasoning pursued in the opinion. If the instruction had been that the declarations were no evidence of *what title was claimed,* then, according to the reasoning, its refusal was proper. Such was not the instruction, but it was that they were no evidence of *the title itself.* The instruction was that the *mere statements* were no evidence of *title.* Now if it be not true that the mere statements are *no evidence* of title, then the converse of the proposition must be true, that the mere statements are *some* evidence of title, and in affirming the refusal to instruct, my brethren necessarily affirm this proposition, not merely that the statements of a person in possession of property are evidence of the *claim* of title made by him, but also *some* evidence of *the title itself;* and the question as to how much or what evidence of title they shall be, or what weight or influence they shall have, in determining the fact of title, is also necessarily left to the

uncontrolled discretion of the jury. It being determined that the statements are admissible and that they are *some* evidence of title in favor of the party making them, it will be found quite impossible, I think, by any instruction which can be given, to guard against the dangerous tendency of such testimony, or to restrain or prevent the improper and injurious influence which it may have upon the minds of the jury. Jurors are, in general, persons deficient in legal learning and inexperienced in examining and weighing evidence, and the effect upon their minds can never be known, which is the ground upon which hearsay is excluded. *Berkeley Peerage Case*, 4 Camp. 415. But the declarations of a party to an action, improperly admitted in his own favor, are something more or worse than mere hearsay, and it has been doubted whether the error is cured, or can be, by an instruction to disregard them. 2 Graham & Waterman on New Trials, 629. The mischiefs which must result from this course of decision, to my mind are manifest. The effect, as it seems to me, clearly is to allow the party to manufacture evidence of title for himself by his own mere statements. I would therefore adopt the rule of other courts and exclude the statements in cases like the present; or if, by inadvertence or otherwise, they were suffered to come in, I would do as all other courts have done—instruct the jury that they were no evidence of title. It is evident, to my mind, that nothing short of this will prevent the mischief.

In conclusion, I desire to refer to two cases recently decided in this court, which are valuable as showing how, on other occasions, my learned associates have viewed these important questions, and how they have added the weight of their judgment to that of all the other courts directly in favor of the propositions for which I contend. They are *Knapp v. Schneider*, 24 Wis. 73, and *Bates v. Campbell*, 26 Wis. 613. In the former, the question was the very same as that here presented,

It was a direct question of title between an execution creditor, who had seized the property as that of his debtor, and a third person who claimed to own it. It was like the case above put by me, if the present defendant had been a judgment creditor of Henry Roebke, and had levied on the oxen in satisfaction of his debt. Among other items of evidence to show title in the debtor, proof was allowed that he had returned the property in controversy, a piano, in his list of property for taxation. This proof was objected to, and the question was upon its admissibility. It will be seen from the opinion, that there was no question as to the fact or sufficiency of the debtor's possession of the property at the time of the listing to let in the proof, provided it had been otherwise competent. The property was in the debtor's house at the the time, and in his possession and under his control as much as any other property which he had. And upon this point Mr. Justice PAINE says: " I was at first inclined to think that this evidence was admissible under the exception to the general rule, which allows the acts of ownership and statements by a vendor *remaining in possession*, explanatory of his possession, to be given in evidence, even against his vendee. This exception is recognized in *Grant v. Lewis*, 14 Wis. 489, and in other cases. But here, according to the plaintiff's statements, he did not purchase either piano of his father. The latter acted merely as his agent in negotiating the purchases. It cannot, therefore, be treated as a case where the relation of vendor and purchaser between the father and son was conceded." It is thus clearly seen that the difficulty was, not that the possession of the debtor did not sufficiently appear to let in the proof, as it clearly did, but that the relation of vendor and purchaser was not established between the parties. The attitude of the case was such, therefore, as distinctly to present the question whether, where title was the immediate question in issue and

to be inquired into, the declarations of the party in possession, or his acts evincing a claim or assertion of title in himself, were admissible *at all* in support of his title or of the title claimed through him. It will be observed that the case was not one where the character of the debtor's possession, or the title claimed by him, became material. The issue as to title or ownership did not depend upon either of these, but upon the direct proofs. It was immaterial that the debtor was in possession and what rights he asserted while in. If the case had been different, and the character of his possession or the title claimed by him material, then, of course, the proof would have been admissible to show such character or the claim made, but nothing further, and not as evidence of his title. The relevancy of the testimony for that purpose is clearly shown by several of the authorities above cited, and particularly 44 N. H. 576, and the cases there referred to. The listing of property and payment of taxes thereon are more potent evidence of a claim of title by the party than his verbal statements or assertions can be, since it is strongly against his interest to have it listed and taxed against himself, unless he owns or claims to own it. The case, therefore, distinctly presented the question of the admissibility of declarations by the party in actions of the class to which this belongs, and the decision was an emphatic denial of such admissibility. It shows to the contrary of what is now affirmed by my brethren, that the declarations of a party in possession of property are always and in all cases admissible in his favor to show the title he is claiming and to explain his possession. For, proceeding with the opinion from the point last quoted, Mr. Justice PAINE says: "And if not" (that is, if the relation of vendor and purchaser did not exist), "I do not know of any rule by which the fact that the father listed the piano for taxation was admissible against the plaintiff, without something

to show knowledge or consent on his part.    The listing was no more than *a statement or claim of ownership.* And it will not be contended that any man's title can be divested *by evidence that another had claimed his property.*"    A more clear enunciation of the doctrine that evidence of what a party claims or asserts with respect to his ownership or title of property is inadmissible in his favor in actions like the present, cannot well be found.    The judgment was reversed upon the sole ground of the admission of such evidence.    And in the present case, if, without the plaintiff's statements that he owned the oxen or that he bought them (the consideration of which as evidence of title the court refused to withdraw from the jury), the jury would have found that they were the property of Henry Roebke, what was it but *divesting* one man's title by evidence that another had claimed his property ?    It is not known, and of course never can be, what the jury would have found without the statements, or if the instruction had been given.    " It is very obvious," say this court, in *State Bank of Wisconsin v. Dutton,* 11 Wis. 374, " that the admission of improper testimony is of a dangerous tendency, since it devolves on the court to determine what no human tribunal can ever satisfactorily determine; that is, what influence and impression the mind of another might have received from such evidence."    I am strongly of opinion, indeed quite satisfied, that they must have found against the plaintiff; but, be that as it may, we only know that they must have considered the statements upon the immediate question of title, and that the majority of this court affirm that it was proper for them to do so, as *some* evidence of title, and how much, it was entirely for the jury to say.

The case of *Bates v. Campbell* was upon demurrer to a complaint in ejectment, in which *bare possession* of the premises in dispute was stated or shown as the only foundation of the plaintiff's right.    The com-

plaint was held sufficient. Citing Greenleaf's Cruise, Mr. Justice PAINE says : " But it has always been held that *bare possession* constitutes the first degree of title." And speaking of personal property he also observes : " The actual possession is sufficient evidence of title against every one who cannot show a better title." The case very clearly recognizes the doctrine everywhere maintained, that possession is *prima facie* evidence of title, and that upon bare possession being shown, with nothing ' to qualify or rebut its effect, the law presumes that the person having it holds under claim of title, and is the owner, until something to the contrary be shown, as this court presumed with respect to the plaintiff's claim of title in that case, which was not averred in the complaint, though his possession was.

" The presumption of right in a party found in the possession of property, or of that *quasi* possession, of which rights only occasionally exercisable are susceptible, is highly favored in every system of jurisprudence, and seems to rest partly on principles of natural justice, and partly on public policy. By the law of England, possession, or *quasi* possession, as the case may be, is *prima facie* evidence of property ; and the possession of real estate, or the perception of the rents and profits from the person in possession, is *prima facie* evidence of the highest estate in that property, namely, a seizin in fee." Best on Presumptions, 87 (Law Lib., vol. 45).

Upon this subject Professor Washburn correctly remarks, " that possession, *however naked*, may become an absolute title or conclusive evidence of title, under the operation of that policy of the law which, for the peace of community, does not allow a possession to be questioned after it shall have been enjoyed for such a length of time as renders it unreasonable, in the eye of the law, to require evidence *aliunde*, that it was holden under a right of ownership derived from some

other sufficient and legitimate source." 3 Wash. on Real Property, 3d ed. 114.

I am still of opinion that the judgment should be reversed.

*By the Court.*—Judgment affirmed.