## No. 11,204.

### THOMAS, ET AL. *v.* SELOOM.

Decided September 27, 1926.  Rehearing denied November 8, 1926.

Action for taking and conversion of chattels.  Judgment for plaintiff.

## *Reversed.*

1. PLEADING—*Conversion—Complaint.*  A complaint which alleges a taking and conversion of chattels is sufficient, and nothing more should be stated.

2. *Conversion—Answer.*  In an action for conversion of chattels, the only question being that of ownership, a denial of plaintiff's ownership is all that is necessary in the answer.

3. EVIDENCE—*General Denial.*  In an action against a sheriff and judgment creditor for the taking and conversion of chattels, the only issue being ownership, the taking by the sheriff, and ownership of the judgment debtor, could be proven under the general denial.

4. *Livestock—Ownership—Brand.*  A registered stock brand is prima facie evidence of ownership of cattle bearing it.

5. APPEAL AND ERROR—*Sufficiency of Evidence.*  In an action for taking and conversion of chattels, the contentions that the evidence was insufficient to support the verdict, and that there was no proof of value, overruled.

6. *Evidence—Hearsay—Cross-Examination.*  The admission of hearsay testimony brought out on cross-examination cannot be assigned as error by the cross-examining party.

7. *New Trial.*  Assignment of error based upon matters not presented by the motion for a new trial, will not be considered on review.

8. EVIDENCE—*Hearsay.*  In an action by Seloom for the taking and conversion of property by a sheriff under execution against her father, offer by defendants to show that the father had repeatedly stated that he was doing business in his daughter's name to prevent the creditor from collecting his judgment, held properly rejected.

9. **Principal and Agent**—*Declarations of Agent.* The declaration of an agent made in connection with an act within the scope of his authority, is competent evidence against the principal.

10. **Evidence**—*Stock Brand.* In an action by a daughter against a sheriff for the taking of cattle under an execution on a judgment against her father, evidence that the brand on the stock while registered in the name of the daughter, was in fact for the use of the father, held material and competent against the daughter.

11.    *Value.* In an action for the taking and conversion of chattels, the contention that incompetent proof of value was received, overruled.

### On Rehearing.

12. **Principal and Agent**—*Declarations of Agent.* *Stone v. O'Brien*, 7 Colo. 458, distinguished.

13. **Evidence**—*Self Serving Declaration.* Statement of a judgment debtor asserting title to property, held, under the facts disclosed not to be a self serving declaration.

## Error to the District Court of Pueblo County, Hon James A. Park, Judge.

Mr. M. G. Saunders, Mr. E. F. Chambers, Mr. S. S. Packard, for plaintiffs in error.

Mr. Charles M. Rose, Mr. Leo P. Kelly, for defendant in error.

*En banc.*

Mr. Justice Denison delivered the opinion of the court.

This was an action by Nancy Seloom against one Wigton and Thomas, sheriff of Pueblo county, for the taking and conversion of chattels. The plaintiff had a verdict and judgment, and defendants bring error.

The complaint alleged plaintiff's ownership of the chattels and the taking and conversion by defendants. This was enough, 2 Chit. Pl. 859, 860; *Baker v. Cordwell,* 6 Colo. 199, and no more should have been said,

Estee's Pl. (4th Ed.) § 2099; *Haynes· v. Zang,* 79 Colo. 42, 244 Pac. 464. The allegations do not amount to trover, but to trespass de bonis. The answer denied plaintiff's ownership and the conversion; the facts which would amount to conversion, however, were undisputed on the trial and the only real issue there, as here, was and is ownership or not; a denial of plaintiff's ownership, then, was all that was necessary in the answer. Both the taking under the writ and the ownership of Young could have been proved on that issue. *Payne v. Williams,* 62 Colo. 86, 91, 160 Pac. 196.

Thomas as sheriff had levied an execution in favor of Wigton on the property in question and sold it to satisfy the judgment. The defendants claimed that the goods belonged to one Young, the execution debtor and father of plaintiff, and had been kept in the name of Seloom in fraud of creditors. The points made by plaintiff in error which we find it necessary to consider are: Nonsuit should have been granted; evidence insufficient to support verdict; erroneous admission and exclusion of evidence.

1. Upon the question of nonsuit: Keeping in mind that the only issue was ownership by plaintiff or not, we have as to part of the converted property, certain horses, the uncontradicted evidence that they were branded with her registered brand which is prima facie proof of her ownership (C. L. § 3126), there could not, therefore, have been a nonsuit.

2. Upon the sufficiency of the evidence to support the verdict: The plaintiff testified unqualifiedly that she was the owner of all of the property; part of it bore her brand; she stated in detail how she became the owner and the sources of the funds by which she acquired it and there was some corroboration of these statements. The jury evidently believed her and we cannot say that they were wrong. There was much to arouse suspicion that Young was the real owner, particularly in that he

was not put on the stand though present in court and that plaintiff allowed him to operate the business, which was dealing in horses, without any regular accounting to her, and to retain as his compensation whatever he chose; the claim of the plaintiff in error, however, that she exercised no supervision and took nothing out of the business is not borne out by the record. It is claimed that there was no sufficient proof of value, but the plaintiff was qualified by her own testimony to speak on that subject and did so.

3. As to evidence: The plaintiff testified that when she had given Young certain sums of money he put it into her business and used it to purchase some of the property in question and that he had told her that he so used it; it is claimed that what he had told her was hearsay; if so, however, it was brought out in cross-examination by defendant and cannot be assigned as error. The sufficiency of the testimony as to title is considered above.

4. It is claimed that the court erred when it rejected defendant's offer to prove that John S. Young (the father) "procured this brand to be taken out in the name of Nancy Young (the plaintiff) to be used by himself," but this was not referred to in the motion for a new trial, and under rule 8 we do not consider it.

5. The court rejected defendant's offer to show that Young had repeatedly said, in substance, that he was doing business in his daughter's name to prevent Wigton from collecting his judgment. It is argued for defendant in error that this is hearsay, and for plaintiffs in error that it is a declaration by one in possession as to the nature of his possession, and by one acting, as to his intent, and therefore competent. We think the case of *Stone v. O'Brien,* 7 Colo. 458, 4 Pac. 792, settles this point against plaintiffs in error. It is there held that declarations of substantially the same sort as those here in question are admissible where the character of the possession or nature of the claim made becomes material with a view

to the determination of some ulterior question, as for instance, cases in which a right rests upon the statute of limitations and it is necessary to show that possession was adverse, but that it is not admissible where the question, as here, is, which party was the actual owner; see pages 460 and 461. There are subsequent cases decided by this court which, at first sight, seemed inconsistent with this position, but carefully considered, they are not so. In *Central Trust Co. v. Culver,* 35 Colo. 93, 83 Pac. 1064, the issue was abandonment or not. Abandonment rests upon intent, and the declarations of one in possession were held to be competent to show an intent not to abandon. The same was true in *Starr v. People,* 17 Colo. 458, 30 Pac. 64, and in *Denver v. Jacobson,* 17 Colo. 497, 30 Pac. 246, where the vital point was intent to dedicate a street or not, and in *Foley v. Gavin,* 76 Colo. 286, 230 Pac. 618, and *Ryan v. Cordas,* 76 Colo. 191, 230 Pac. 608, where the question was the existence or not of a common-law marriage, which is a matter of intent, and in *Williams v. Williams,* 20 Colo. 51, 58, 64, 37 Pac. 614, the question was of the effect of the conduct of the defendant upon the mind of the husband in a suit by the wife for alienation of affections, and the husband's declarations accompanying his desertion of the wife we held to be competent to show his state of mind. But here Young's intent is irrelevant to the issue, ownership by plaintiff or not. If Seloom owns, no intent of Young can disparage her title, if not, still his intent makes no difference, and so, under *Stone v. O'Brien,* no direct or indirect statement by him that he is the owner can be used against her. We must say, therefore, that the above objections to the offered testimony were sound.

There is one point, however, which we think shows error on the part of the district court in rejecting testimony. The defendants showed by the witness Campbell that he had sold a horse to Young. Then they made the following offer which was rejected: "We now offer to

show by this witness that in connection with the transaction just testified to by the witness, John S. Young made the statement to this witness that he had W. I. Wigton just where he wanted him, and he was doing business in the name of Nancy Seloom.'' Young, it must be noted, was at the time of this offer claimed by plaintiff to be her agent to conduct the horse dealing business and in buying the horse of Campbell was acting within his authority as such agent in such business and the offer was to show that *in connection with that transaction* he made the above declaration. If to these facts we apply the elementary rule that the declaration of an agent made in connection with an act within the scope of his authority is competent evidence against the principal we cannot escape the conclusion that the evidence offered should have been admitted. Wig. Ev. § 1078; 22 C. J. 219; *Fairlie v. Hastings,* 10 Ves. Jr. 123, Wambaugh Cases on Agency, 447 et seq. That Young's declaration, if true, defeats his own agency and destroys its competency is not an objection to our conclusion, because so long as plaintiff claims him to be agent she cannot deny the competency of his declarations in and about the business with which she says she has entrusted him, and if he is not agent he is principal and her case is lost. There were other similar offers which were erroneously rejected.

The defendant also offered to show that Young registered the brand bar L 7, in plaintiff's name, but really for his own use. We doubt whether the offer was sufficient, but if that fact could be proved by competent evidence it was relevant, material and competent against plaintiff.

The evidence of the witness Fear, which was offered by defendants, of conversations with Young, would seem to be competent, but from the offer we cannot be sure that the declarations there referred to were in connection with a transaction within the scope of his alleged authority as agent.

The court en banc has had several conferences upon these matters and has given them most careful consideration.

6. It is claimed that incompetent proof of value was received, but we do not find that such is the case. The arguments, when analyzed, go to the weight rather than the competency of this testimony.

The judgment is reversed and new trial granted.

MR. CHIEF JUSTICE ALLEN not participating.

### On Rehearing.

The defendant in error says that we are inconsistent in our opinion, since we follow *Stone v. O'Brien*, 7 Colo. 458, 4 Pac. 792, and then hold evidence which that case rejected to be competent. She is mistaken. The ground of the rejection of the evidence in that case was that possession by the agent Payne was not enough to make his declarations competent, to which we adhere, but the declaration which we now hold competent was made by an agent not merely in possession, but while in the act of exercising the duties of his agency and with reference to those duties. The distinction seems to us clear.

It is also claimed that the declaration of Young was self-serving. It is true that he was asserting his own title, and so was perhaps serving himself, but his statement, if known to be true, would, under the circumstances of this case, ruin him by subjecting all the property in question to his creditors. It was really, therefore, not self-serving but the opposite, and so the reason for the self-serving rule is not present in this case.

Rehearing denied.

MR. JUSTICE ADAMS dissents.

MR. JUSTICE ADAMS dissenting.

I think we are all agreed that if Young's statements were self-serving, that they are not admissible, but that if they were against his interest, they are admissible. How

shall we find out which is the case? If he *is* the owner of the chattels, it may be argued that his statement that he is such owner would be against interest because he would lose them under the execution; but if he is *not* the owner, his statements would be self-serving, because the application of the goods and chattels of another to the payment of his personal debts would result in diminishing his own liabilities at the expense of another, and thus augment his net assets without depleting his own stock.

Young's ownership, then, is the criterion in determining whether his statements were self-serving or against interest. How is such ownership to be ascertained, so that we shall know whether his declarations are or are not admissible? It can be found out only by evidence other than his own. But when we have done this, we have no need of such testimony as to what Young said, either for or against the question of ownership, because such ownership being the issue to be decided, it has been settled and must be settled by evidence other than Young's alleged declarations. For these reasons, I think his statements were inadmissible.

I cannot agree with the main opinion that it would ruin Young to have his debts paid with Mrs. Seloom's property, if it was hers. Many a man would doubtless welcome being "ruined" by having his debts paid with the property of another. It might ruin the owner of the property, but not the debtor. It might save the latter from the bankruptcy courts.

I think that the decision of the majority of the court in this case is contrary to *Stone v. O'Brien,* 7 Colo. 458, 4 Pac. 792, which has been followed in this state for more than 40 years. Mr. Justice Helm's conclusions were arrived at principally from the dissenting opinion of Mr. Chief Justice Luther S. Dixon of the Wisconsin Supreme Court in *Roebke v. Andrews,* 26 Wis. 311. Justice Dixon's dissent in that case was adopted by this court in

*Stone v. O'Brien* and is highly commended by Justice Helm in the latter case.

The court's decision in the instant case appears to me to violate the rule against hearsay evidence in admitting statements of third parties as to what Young is alleged to have said. If Young was not Mrs. Seloom's agent, but a stranger, the statement of what he, as a stranger, said to another third person is too remote; if he was he'r agent, I cannot see how his statements, totally destructive of her property interests, can be said to be in any way within the scope of his emplöyment, however or whenever made. If it is, then all that an agent would have to do to pay up his personal debts would be to circulate a rumor, or give out statements where he might think they would be most apt to reach the ear of the court, to the effect that his principal's property belonged to him, thus allowing his creditors to use such statements as evidence in his own favor, and so subject his principal's property to the payment of his own debts, whereas, as said by Justice Helm in *Stone v. O'Brien*, on page 461 of that opinion, the real owner could not call a single witness to prove what *he* has said on the subject. Young, in the instant case, stands in the position of Payne in *Stone v. O'Brien*. There the alleged statements of Payne were held to be inadmissible, but here Young's statements are held to be admissible.

It must be admitted by the respective advocates of these opposing theories, that both sides will readily find many decisions of other states to support either view. The cases are in conflict, and the two divergent doctrines are like two flocks of birds, following their leaders and flying in opposite directions. The authorities are partially collated in a note to be found at page 692 of American Ann. Cases, 1914D, and the Colorado case of *Stone v. O'Brien, supra,* is represented as an outstanding precedent in favor of what the compiler of the volume regards as the minority view in the several states.

But be it the minority or not, this court has not been divided on this question of evidence before, and hitherto *Stone v. O'Brien* has been the authorized text of the bar of this state. Now, after a lifetime, we have gone over to the other side, it seems to me. True, a distinction is attempted as to declarations made within the scope of an agent's employment, from those made outside thereof, but I am unable to regard the giving of utterance by an agent to words that may result in turning his employer's pocketbook inside out, as being any more within the scope of his employment than it would be to assume that a principal hires an agent for the purpose of mutilating his employer's person, or that he is authorized so to do. If some basic principle of justice required us to reverse ourselves, I should not hesitate to subscribe to it, but I cannot feel that any such occasion exists. In any event, I believe that we should minimize the difficulties of trial practice by declaring ourselves squarely in favor of one side or the other of the two conflicting doctrines, and that we should not beguile ourselves with doubtful distinctions into the belief that we have not reversed *Stone v. O'Brien* in the seventh Colorado.

For the above reasons, I respectfully dissent.